# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-003

Filing Date: January 12, 2011

Docket No. 30,782

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

JOSE PEDRO GARCIA,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
George P. Eichwald, District Judge

Law Office of Craig C. Kling
Craig Charles Kling
San Diego, CA

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**CHÁVEZ, Justice.**

**{1}**    This case involves the conviction of Defendant Jose Pedro Garcia for multiple charges arising from the Memorial Day 2005 murder of Jeff Armstrong. Defendant attended a party that day at the apartment of Armstrong's neighbor, Sarita Duran. According to eyewitnesses, Defendant went to Armstrong's apartment to steal marijuana for use at the party, a struggle ensued, and Garcia shot and killed Armstrong.

## I.     BACKGROUND

1

**{2}** The jury convicted Defendant of one count of first degree felony murder, contrary to NMSA 1978, Section 30-2-1(A) (1994); one count of armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973); one count of possession of a firearm or destructive device by a felon, contrary to NMSA 1978, Section 30-7-16 (2001); and one count of tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). The district court merged the armed robbery count into the first degree felony murder count.

**{3}** In his appeal, Defendant presents six issues. He contends that (1) insufficient evidence was presented to support the tampering with evidence and felony murder convictions; (2) the district court improperly rejected Defendant's motion to proceed pro se; (3) the district court erred by refusing to sever Defendant's felon in possession of a firearm charge; (4) Defendant's statement to Rio Rancho police was improperly admitted; (5) defense counsel rendered ineffective assistance; and (6) the district court improperly failed to vacate Defendant's armed robbery conviction, the predicate offense for felony murder. We affirm Defendant's convictions for felony murder, felon in possession of a firearm, and tampering with evidence, and hold that (1) sufficient evidence was adduced at trial to support the felony murder and tampering with evidence convictions; (2) the district court properly denied Defendant's belated pro se motion; (3) the district court's failure to sever the felon in possession of a firearm count did not prejudice Defendant; (4) Defendant's statement to Rio Rancho police was admissible; and (5) defense counsel provided Defendant with adequate representation at trial. We vacate the armed robbery conviction, holding that the district court erred by only merging that conviction with the felony murder conviction without also vacating the armed robbery conviction, as required under New Mexico law. Because the district court imposed a life sentence on Defendant, we review Defendant's appeal directly from the district court, pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. *See State v. Smallwood*, 2007-NMSC-005, ¶ 6, 141 N.M. 178, 152 P.3d 821 ("[O]ur appellate jurisdiction extends to appeals from district court judgments imposing a sentence of life imprisonment or death.").

## II.    DISCUSSION

### A.    Sufficient Evidence Was Presented at Trial to Support the Jury's Felony Murder and Tampering with Evidence Verdicts.

**{4}** Defendant contends that the felony murder and tampering with evidence convictions fail for lack of evidence. Regarding the felony murder count, he argues that the relevant witness testimony at trial was not credible and cannot support the conviction. As for the tampering count, Defendant challenges the conviction on the basis that his repeated attempts to have others conceal evidence (the murder weapon) failed, and therefore only a charge of "attempted" tampering with evidence is viable.

**{5}** Because an appellate tribunal does not enjoy the same exposure to the evidence and witnesses as the jury at trial, our review for sufficiency of the evidence is deferential to the

jury's findings. *See State ex rel. Moreno v. Floyd*, 85 N.M. 699, 703, 516 P.2d 670, 674 (1973). We review "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). Evidence is viewed "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). In particular, New Mexico appellate courts will not invade the jury's province as fact-finder by "second-guess[ing] the jury's decision concerning the credibility of witnesses, reweigh[ing] the evidence, or substitut[ing] its judgment for that of the jury." *State v. Lucero*, 118 N.M. 696, 699, 884 P.2d 1175, 1178 (Ct. App. 1994). So long as "'a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction,'" we will not upset a jury's conclusions. *Duran*, 2006-NMSC-035, ¶ 5 (quoting *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992)).

### i. The non-conflicting testimony of multiple witnesses provided the jury with a reasonable basis to find Defendant guilty of felony murder.

**{6}** Defendant urges this Court to reject the eyewitness testimony pertinent to the felony murder charge as "inherently unbelievable." Defendant contends that each witness harbored reasons to provide false or misleading testimony, and therefore the testimony fails to "meet a minimal standard of truthfulness." Defendant argues that New Mexico law permits this Court to override a jury's witness credibility determinations when multiple witnesses "fail to meet any test of truth." *See State v. Armijo*, 35 N.M. 533, 543, 2 P.2d 1075, 1080 (1931) (holding that the inherently improbable, uncorroborated testimony of an accomplice was insufficient to support a conspiracy conviction). We disagree and hold that the jury was presented with substantial evidence of the "essential facts required for [the felony murder] conviction." *Duran*, 2006-NMSC-035, ¶ 5 (internal quotation marks and citation omitted).

**{7}** To prove felony murder, the State must establish that a predicate, inherently dangerous felony was committed; the defendant caused the death while committing the predicate felony; and the defendant either intended to kill the victim or knew his actions "created a strong probability of death or great bodily harm." UJI 14-202 NMRA. At Defendant's trial, the jury was instructed on the felony murder count as follows:

> 1. The defendant, Jose P. Garcia, committed the crime of Armed Robbery;
>
> 2. Jose P. Garcia caused the death of Jeff Armstrong during the commission of or the attempt to commit armed robbery;
>
> 3. Jose P. Garcia intended to kill or knew that his acts created a strong probability of death or great bodily harm;

4. This happened in Sandoval County, New Mexico on or about the 30th day of May, 2005.

**{8}** At trial, a great deal of direct and circumstantial evidence was presented to support the felony murder charge. Despite Defendant's claims to the contrary, numerous witnesses testified that Defendant was present at the party. Multiple witnesses also testified that Defendant visited Armstrong's apartment on at least two occasions while the party was underway. The party's host, Sarita Duran, testified that she and Defendant made an initial visit to Armstrong's where the two successfully obtained a small amount of marijuana. When that supply of marijuana was exhausted, Henry Yerena and Louis Ramirez who were at the party, testified that Defendant gestured to a screwdriver tucked in his waistband, stated that he was going to "jack the fool," and returned to Armstrong's apartment.

**{9}** Edgardo Collins also went to Armstrong's apartment to obtain marijuana. Duran testified that the two men went to Armstrong's apartment together, while Collins contended that he followed Defendant there after Defendant left the party. Upon entering the apartment, Collins testified that he saw Defendant punching Armstrong and holding the screwdriver against Armstrong's neck. Collins watched as Armstrong attempted to reach for a gun concealed under the cushions of the couch where he was seated, but Defendant retrieved the gun first. Collins testified that Defendant put the gun to Armstrong's head and pulled the trigger. When the weapon failed to fire, Defendant pulled the trigger a second time and shot and killed Armstrong.

**{10}** After the shot was fired, Duran, Yerena, and Collins testified that Defendant and Collins ran back into Duran's apartment. Duran and Yerena testified that Defendant entered the apartment with the gun in his hand. According to testimony from Duran and Collins, Defendant twice asked Duran to hide the gun, but she refused. Louis Ramirez testified that later, while at the home of Gabriel Moreno, Defendant was showing off the gun and stated that he had taken the gun from Armstrong and "blasted him." Defendant then tried unsuccessfully to sell the gun to Ramirez and separately to Moreno.

**{11}** Sufficient evidence was presented to permit a reasonable jury to find all the elements of a felony murder conviction beyond a reasonable doubt. Multiple witnesses provided testimony regarding events before, during, and after the Armstrong murder that supported the jury's verdicts. This testimony was only controverted by Defendant's statements to police taken soon after Armstrong's murder. Collins provided direct evidence of the murder and armed robbery. While the defense attempted to establish Collins' motive to lie, the testimony of other witnesses supported and was consistent with his account of events. Most compelling in this respect was the testimony proffered by multiple witnesses that (1) Defendant intended to rob the victim; (2) Defendant possessed the gun immediately after the shooting; and (3) Defendant repeatedly endeavored to get rid of the gun after Armstrong's death. The testimony adduced at trial stands in marked contrast to *Armijo*, the case relied upon by the defense, where this Court reversed a conspiracy conviction based upon the inherently improbable, uncorroborated testimony of an accomplice who earlier had declared

4

that the defendant was innocent. 35 N.M. at 542, 2 P.2d at 1080 (opinion of court on rehearing). Accordingly, it was well within the jury's fact-finding function to conclude that the testimony adduced at trial was both credible and sufficient, supporting the finding that Defendant committed the predicate offense of armed robbery and then intentionally killed Armstrong during the course of the robbery. As a result, we leave the jury's determinations of credibility intact and decline to grant Defendant's request to reverse his felony murder conviction due to insufficient evidence.

### ii. Defendant's overt acts to conceal evidence constitute sufficient evidence to support the tampering with evidence conviction.

{12} Defendant also argues that there was insufficient evidence adduced at trial to support his tampering with evidence conviction. The tampering with evidence charge arose from Defendant's efforts to conceal the weapon used in the Armstrong homicide. Defendant contends that because his multiple efforts to conceal the weapon failed and the weapon was never recovered, the State cannot meet its burden of proof. However, we construe Defendant's extensive efforts to rid himself of the murder weapon as sufficient evidence to support the jury's findings.

{13} Under New Mexico law, the elements of tampering with evidence are (1) "destroying, changing, hiding, placing or fabricating any physical evidence," and (2) "with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Section 30-22-5(A). "When there is no other evidence of the specific intent . . . to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *Duran*, 2006-NMSC-035, ¶ 14. Where there is no direct evidence of an intent to undermine law enforcement activities, and no overt act permitting an inference of such intent, "the evidence cannot support a tampering conviction." *Compare State v. Silva*, 2008-NMSC-051, ¶¶ 18-19, 144 N.M. 815, 192 P.3d 1192 (holding that the State failed to meet its burden where it "effectively asked the jury to speculate that an overt act of . . . hiding [the murder weapon] had taken place, based solely on the fact that such evidence was never found" (alteration in original) (internal quotation marks and citation omitted)), *with State v. Arellano*, 91 N.M. 195, 197, 572 P.2d 223, 225 (Ct. App. 1977) (affirming tampering conviction where the defendant committed the overt act of giving his brother a loaded gun used in a homicide and instructed brother to "'hold it for him'"). Importantly, when a tampering conviction is based on concealing evidence, conviction is not predicated on actual recovery of the evidence. *See State v. Johnson*, 2004-NMSC-029, ¶¶ 3, 54, 136 N.M. 348, 98 P.3d 998.

{14} In this case, Defendant perpetrated a sequence of overt acts in an effort to both rid himself of the firearm and conceal it from the police, permitting a rational jury to find both elements of Section 30-22-5(A) beyond a reasonable doubt. The trial transcript is littered with evidence of multiple acts committed by Defendant in an effort to thwart law enforcement efforts by concealing or transferring possession of the gun. As we have already discussed, these acts included two attempts to sell the gun to acquaintances and two attempts

5

to give the gun to another acquaintance, urging that it be hidden. Ultimately, law enforcement was unable to recover the gun. The jury could reasonably infer from these facts that Defendant ultimately achieved his objective of disposing of the gun. His multiple overt acts made clear his intent to thwart law enforcement by jettisoning key evidence. Defendant's conviction for tampering with evidence is affirmed.

**B.      Failure to Sever the Felon-in-Possession Charge Did Not Actually Prejudice Defendant and Therefore Does Not Constitute an Abuse of Discretion.**

**{15}**      Defendant asserts that the trial judge improperly denied his motion to sever the felon in possession of a firearm charge from the other offenses. Defendant contends that leaving the charge joined to these proceedings enabled otherwise inadmissible evidence of his prior felonies (battery and aggravated assault on a police officer) to be admitted, thereby prejudicing the jury against him.

**{16}**      In New Mexico, joinder of similar offenses is required under Rule 5-203(A) NMRA. *See State v. Gallegos*, 2007-NMSC-007, ¶ 10, 141 N.M. 185, 152 P.3d 828 ("Rule 5-203(A) is not a discretionary or permissive rule; it demands that the State join certain charges."). However, in the event the trial judge determines that the joinder of offenses will result in prejudice to either party, the offenses may be severed pursuant to a party's motion. Rule 5-203(C). The decision to grant a severance motion lies within the trial judge's discretion and will not be overturned on appeal unless the joinder of offenses results in *actual* prejudice against the moving party. *See State v. Dominguez*, 2007-NMSC-060, ¶ 9, 142 N.M. 811, 171 P.3d 750; *see also Gallegos*, 2007-NMSC-007, ¶ 18 ("Even when the trial court abuses its discretion in failing to sever charges, appellate courts will not reverse unless the error actually prejudiced the defendant."); *State v. Ramming*, 106 N.M. 42, 46, 738 P.2d 914, 919 (Ct. App. 1987) ("[T]he standard of review applicable to a severance issue is exceedingly narrow."). Defendant bears the burden of establishing that he was actually prejudiced by a failure to sever. *State v. Duffy*, 1998-NMSC-014, ¶ 42, 126 N.M. 132, 967 P.2d 807.

**{17}**      In this case, Defendant and the State agree that the evidence of the prior felony conviction would have been inadmissible in a separate trial, and therefore the felon in possession charge should have been severed. As this Court has held, "one test for abuse of discretion is whether prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial." *Dominguez*, 2007-NMSC-060, ¶ 10 (internal quotation marks and citation omitted). The potential for prejudice is especially ripe where a defendant faces the prospect of admission of evidence of a past felony. *Id*. ¶ 10. As a result, we have cautioned the district courts that "[a]bsent an affirmative finding of cross-admissibility, the better practice is for the trial court to sever a felon in possession charge to avoid both error and the 'appreciable risk' of reversal on appeal." *Id*. ¶ 13.

**{18}**      In *Dominguez,* we explained that putting the facts of a prior felony before the jury would put "pressure on the accused to testify so as to explain his past . . . thereby compromising his constitutional right to silence." *Id*. ¶ 11. We concluded that the

"Defendant's prior unrelated crime most certainly would not have been admissible in a separate trial of Defendant's remaining charges." *Id*. Thus, severance -- or some other remedy amenable to the defendant -- was called for to safely wall off the facts of the inadmissible past felony act from the jury's consideration of the remaining charges. As the parties in this proceeding agree, the "better practice" of severing the felon in possession charge would have addressed the very concerns set forth in *Dominguez*.

**{19}** However, we also noted that any error by the trial judge is harmless if it did not actually prejudice the defendant. *Id*. ¶ 13. In *Gallegos*, we set forth a variety of criteria to measure whether a defendant has been prejudiced by the joinder of offenses. 2007-NMSC-007, ¶ 41.

> [F]actors tending to show that a defendant was not prejudiced . . . include: (1) dissimilar offenses such that a jury would not confuse them; (2) the defendant being acquitted of some charges; and (3) proper jury instructions that adequately make clear to the jury that it must not consider evidence inadmissible to a particular count when coming to a verdict on that count.

*Id*. (citations and footnote omitted). Underlying these considerations is the concern that joinder will result in the jury "weigh[ing] the evidence against the defendant cumulatively, rather than independently" for each offense. *State v. Boscarino*, 529 A.2d 1260, 1265 (Conn. 1987). This concern is especially relevant where trials are "unusually long and complex," the prosecution "intertwin[es] the offenses" in making its case, the offenses are "inflammatory in nature," the defendant is convicted on all counts, the offenses are factually similar, or where a conviction occurs despite sparse evidence. *Gallegos*, 2007-NMSC-007, ¶ 41.

**{20}** Defendant, who carries the burden to establish prejudice, does not contend that he was *actually* prejudiced in this case, stating that "the jury's knowledge of [his] past violent conviction *could* have influenced the jury's decision to convict." We agree and conclude that because of the overwhelming weight of the uncontroverted evidence supporting guilt in this case, the efforts by the trial judge to mitigate the effect of the disputed evidence, and the dissimilar nature of the charged offenses, no prejudice resulted from the failure to sever. While Defendant correctly points out that the judgment and sentence order from Defendant's prior felonies was entered into evidence during trial, the State never identified the names or any details of the prior offenses and only generically mentioned the fact of the prior offenses as an element of the felon in possession charge, in no way "intertwining" the past felony evidence with the tampering with evidence, felony murder, and armed robbery charges. *See Gallegos*, 2007-NMSC-007, ¶ 41. Even if the jury learned the identity or nature of Defendant's prior felonies from the judgment and sentence order, the State avoided any other mention of the prior crimes, instead building its case upon an array of witness and police testimony. There was substantial evidence, aside from the reference to the prior felonies, to support Defendant's convictions for felony murder, armed robbery, and tampering with evidence.

7

**{21}** In this case, the trial judge took a further step to mitigate any impact of the prior felony evidence by instructing the jury to consider each charged offense separately. *See Gallegos*, 2007-NMSC-007, ¶ 41. Unlike *Gallegos*, where the defendant was prejudiced by the failure to sever multiple similar sex-crime counts stemming from a series of sexual encounters with minors, in these proceedings Defendant was charged with four distinct offenses arising from a singular sequence of events. *Id.* ¶¶ 4, 5. Therefore, the trial judge's instruction to consider each offense separately adequately addressed any concern that the jury might apply the evidence of prior felonies beyond the felon in possession charge. Due to these myriad factors, there is no "appreciable risk that the jury convicted for illegitimate reasons." *See Duffy*, 1998-NMSC-014, ¶ 42 (internal quotation marks and citation omitted). The failure to sever did not result in any prejudice to Defendant and the district court's decision not to sever constitutes harmless error.

**{22}** Defendant contends that actual prejudice should be presumed because the judgment and sentence order from the prior felonies was admitted for the "jury's continued review." Our precedent has not supported a bright-line standard. Instead, we have required proof that the failure to sever actually prejudiced the defendant. *See Gallegos*, 2007-NMSC-007, ¶¶ 37-38. Nevertheless, we recognize the increased risk of prejudice when one of the charges involves a felon in possession charge. Although the district court in this case was able to avoid any actual prejudice to Defendant, the risk of prejudice is too great for us to continue to permit our equivocal cautionary language in *Dominguez* to survive. Accordingly, we modify *Dominguez* to require a trial judge to sever or bifurcate the felon in possession charge when the trial judge determines that prior felony evidence is not cross-admissible. The trial judge may exercise his or her discretion only as to whether to sever or bifurcate, considering the competing advantages and disadvantages of the two alternatives. This approach affords trial judges clearer guidance than we provided in *Dominguez* and eliminates any risk of actual prejudice that almost always arises in the admission of prior felony convictions that are not cross-admissible.

**C.    The Trial Judge Properly Exercised His Broad Discretion in Denying Defendant's Motion to Proceed Pro Se Mid-Trial.**

**{23}** Defendant contends that his Sixth Amendment right to represent himself pro se was improperly denied at trial because the district court failed to assess whether Defendant knowingly and intelligently waived his right to counsel. Defendant made his pro se motion on the third day of a four-day trial.

**{24}** A defendant's constitutional right to undertake pro se representation is well-established. N.M. Const. art. II, § 14 ("In all criminal prosecutions, the accused shall have the right to appear and defend himself in person."); *Faretta v. California*, 422 U.S. 806, 832 (1975) ("The Framers selected in the Sixth Amendment a form of words that necessarily implies the right of self-representation. That conclusion is supported by centuries of consistent history."); *State v. Pino*, 1997-NMCA-001, ¶ 8, 122 N.M. 789, 932 P.2d 13 ("The Sixth Amendment right to counsel includes, as a corollary, the right not to have counsel.").

In *Faretta*, a landmark case on the law of pro se representation, the United States Supreme Court clarified that the Sixth Amendment right to assistance of counsel includes the corollary right to reject the imposition of counsel in state criminal proceedings. 422 U.S. at 834 ("To force a lawyer on a defendant can only lead him to believe that the law contrives against him."). As the *Faretta* Court expressed, it is the defendant who "will bear the personal consequences of a conviction," and thus should be allowed the freedom to determine the fundamental course of his or her defense. *Id.*

**{25}** This right is not absolute, however, and may not be invoked inter alia "to cause delay or thwart the orderly and fair administration of justice." *State v. Lewis*, 104 N.M. 218, 221, 719 P.2d 445, 448 (Ct. App. 1986). Three requirements must be satisfied for a defendant to proceed pro se. First, the defendant must "clearly and unequivocally" assert his intention to represent himself. *State v. Hamilton*, 104 N.M. 614, 617, 725 P.2d 590, 593 (Ct. App. 1986) (internal quotation marks omitted) (quoting *Lewis*, 104 N.M. at 220, 719 P.2d at 447). Second, the defendant must make this assertion in a timely fashion. *See Lewis*, 104 N.M. at 221, 719 P.2d at 448; *see also Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 161-62 (2000) ("The defendant must 'voluntarily and intelligently' elect to conduct his own defense, *and most courts require him to do so in a timely manner*." (emphasis added) (internal quotation marks and citations omitted)); *United States v. Nunez*, 877 F.2d 1475, 1478-79 (10th Cir. 1989) (holding that the third day of trial was too late to invoke the right to self-representation). Third, the defendant must "knowingly and intelligently" relinquish the benefits of representation by counsel. *Lewis*, 104 N.M. at 220, 719 P.2d at 447 (citing *Faretta*, 422 U.S. at 835 (internal quotation marks and citation omitted)).

**{26}** A defendant's constitutional privilege to proceed pro se is sharply curtailed when it is not sought in a timely fashion. If it is requested in advance of trial, a defendant who makes the request "clearly and unequivocally" and "knowingly and intelligently" is presumptively entitled to the right. *Lewis*, 104 N.M. at 220, 221, 719 P.2d at 447, 448 (internal quotation marks and citation omitted); *see also United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990) ("[T]he right to self-representation is unqualified . . . if demanded *before* trial." (internal quotation marks and citation omitted)). However, once the jury has been selected, "'it becomes discretionary with the trial court whether to allow the defendant to proceed *pro se*.'" *Mayes*, 917 F.2d at 462 (quoting *United States v. Gillis*, 773 F.2d 549, 559 n.14 (4th Cir. 1985)). "[T]he trial court is recognized as having broad discretion to reject as untimely a request made during the course of the trial." 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(d), at 753-54 (3d ed. 2007). Thus, we review a belated pro se request, made after the start of trial, for abuse of the district court's discretion. *United States v. Beers*, 189 F.3d 1297, 1303 (10th Cir. 1999) ("When [a] defendant does not assert this right before trial, we review the district court's decision whether to allow defendant to proceed pro se for an abuse of discretion.").

**{27}** The district court may exercise its discretion by balancing whatever prejudice is alleged by the defendant against considerations of "'disruption of the proceedings,

9

inconvenience and delay, and possible confusion of the jury.'" *Mayes,* 917 F.2d at 462 (quoting *Fulford v. Maggio*, 692 F.2d 354, 362 (5th Cir. 1982)); *see also Lewis*, 104 N.M. at 221, 719 P.2d at 448. "Other considerations include 'the reason for the request [and] the quality of the counsel representing the party.'" *Mayes*, 917 F.2d at 462 (quoting *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976)).

**{28}** In these proceedings, Defendant did not make his pro se request until three days into the trial, indisputably invoking timeliness concerns and investing substantial discretion in the trial judge. When Defendant made his request to proceed pro se, Judge Eichwald afforded him an ample opportunity to be heard. Defendant addressed the court three times, questioning his counsels' tactical decisions and thoroughness. Defendant also asserted that he understood the consequences of self-representation. The State objected to his pro se motion, contending that a mid-trial pro se designation would invite a mistrial, Defendant had not displayed adequate knowledge to function effectively in a pro se capacity, and Defendant's existing counsel had done a "good job."

**{29}** After the parties' arguments, the trial judge rightly examined the impact of the timing of Defendant's motion, focusing on the competence of his present counsel. After recognizing Defendant's Sixth Amendment right to self-representation, Judge Eichwald asserted that "the test [to invoke the pro se right] is reasonably competent counsel." While this is not a precise articulation of the law, it still presents an appropriate standard. As the Tenth Circuit set forth in *Mayes*, a trial judge may consider inter alia counsel's competence when assessing a pro se motion proffered by a defendant mid-trial. 917 F.3d at 462. It is well settled that a trial judge enjoys "broad discretion" when a defendant makes an eleventh-hour pro se request. 3 LaFave, *supra* § 11.5(d), at 753-54. Certainly, where the defendant is not prejudiced by the continuation of existing counsel, and the state has highlighted concerns that the proceedings will be disrupted, the judge's sound exercise of discretion in balancing these equities is not to be second-guessed.

**{30}** Defendant asserts that Judge Eichwald erred by failing to assess whether Defendant requested the pro se designation knowingly and intelligently. We disagree. *Faretta* provided three separate, independent bases for rejecting a "clear and unequivocal" pro se request: (1) timeliness; (2) the defendant's misconduct; or (3) the defendant's inability to waive the right to counsel knowingly and intelligently. *Faretta*, 422 U.S. at 807, 834 n.46, 835-36; *see* 3 LaFave, *supra* § 11.5(d), at 753-56. Thus, a trial judge is at liberty to reject a pro se motion on any of these independent grounds. Judge Eichwald's decision to base his decision solely on factors related to timeliness was squarely within his discretion and provided Defendant all rights due him under the Sixth Amendment. Therefore, Defendant's pro se claim fails.

**D.**    **Because Defendant Bases His Claim for Exclusion of His Statement to Rio Rancho Police on a Law Not Then in Effect, the Claim is Baseless.**

**{31}** Defendant argues that a statement he made to the Rio Rancho police the day after the

Armstrong homicide should have been suppressed pursuant to NMSA 1978, Section 29-1-16 (2005), which requires state or local law enforcement officers to electronically record custodial interrogations when reasonably able to do so. However, Section 29-1-16 did not take effect until January 1, 2006, while the relevant interview of Defendant took place on May 31, 2005. 2005 N.M. Laws, ch. 252, § 3. Even though the law passed the Legislature during its 2005 session, the Legislature explicitly directed that the statute take effect prospectively on January 1, 2006. *Id. See generally State v. Perea*, 2001-NMSC-026, ¶ 4, 130 N.M. 732, 31 P.3d 1006 ("Generally, a statute is applied prospectively unless the legislature has made clear its intention to apply it retroactively."). A law cannot be violated when it is not yet in effect. Thus, Defendant's claim under Section 29-1-16 fails.

**E.**  **Because Defense Counsel Employed Legitimate Tactics and Strategy, Defense Counsel Did Not Render Ineffective Assistance of Counsel on Defendant's Behalf.**

**{32}**  Defendant claims that he received ineffective counsel at trial because his counsel failed to request a voluntary intoxication jury instruction per UJI 14-5111 NMRA. Defendant argues that evidence of his consumption of alcohol and marijuana at Sarita Duran's party warranted the instruction, and had it been given, the jury could have used the instruction to negate the mens rea required for the felony murder predicate offense of armed robbery.

**{33}**  Under the Sixth Amendment, criminal defendants are entitled to "reasonably effective" assistance of counsel. *State v. Schoonmaker*, 2008-NMSC-010, ¶ 29, 143 N.M. 373, 176 P.3d 1105; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). To state a claim for ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was deficient, and (2) such deficiency resulted in prejudice against the defendant. *State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162. However, there is a strong presumption that trial counsel's conduct "'falls within the wide range of reasonable professional assistance.'" *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (quoting *Strickland*, 466 U.S. at 689). An appellate court will not second-guess counsel's strategic judgment unless the conduct does not conform with "an objective standard of reasonableness." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted). Thus, any "sound" trial tactic or strategy withstands review. *See Hunter*, 2006-NMSC-043, ¶ 13 (stating that defendant must overcome presumption that the challenged action might be considered sound trial strategy). We review claims of ineffective assistance of counsel de novo. *Duncan v. Kerby*, 115 N.M. 344, 347-48, 851 P.2d 466, 469-70 (1993).

**{34}**  In these proceedings, we conclude that trial counsels' performance was not deficient and we need not reach the prejudice prong of the inquiry. We reject Defendant's ineffective assistance claim on two bases. First, Defendant was not entitled to a voluntary intoxication claim, and second, the decision not to seek a voluntary intoxication was effective trial strategy, well within the parameters of sound representation.

11

**{35}** A finding of voluntary intoxication provides a defense to specific intent crimes where "the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Lovato*, 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct. App. 1990). In order to receive a voluntary intoxication instruction, there must be evidence supporting the conclusion that the defendant was actually intoxicated. *See State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69; *see also State v. Hernandez*, 2003-NMCA-131, ¶¶ 20-22, 134 N.M. 510, 79 P.3d 1118. Merely demonstrating that a defendant consumed alcohol or other intoxicants is inadequate. *Compare Hernandez*, 2003-NMCA-131, ¶ 21 (holding that the defendant was not entitled to an instruction where "[d]efendant presented evidence that he had consumed alcohol . . . [but] presented no evidence . . . that he was intoxicated to any degree, let alone to the point that it affected his ability to form the necessary mental state for a specific-intent crime"), *with State v. Privett*, 104 N.M. 79, 81-82, 717 P.2d 55, 57-58 (1986) (holding that the defendant was entitled to an instruction where evidence was presented at trial that the defendant "had a strong odor of alcohol on his breath and appeared 'strongly intoxicated,'" a blood test done on the defendant showed a blood alcohol content of 0.18%, and witnesses testified that the defendant was drunk).

**{36}** In this case, Defendant provided no evidence of his voluntary intoxication. While there was testimony to support that Defendant consumed alcohol, and some indirect testimony suggesting that Defendant smoked marijuana, no witnesses testified that Defendant appeared intoxicated. Because there was no evidence establishing Defendant's intoxication, there was no basis for counsel to seek a voluntary intoxication instruction. *See Hernandez*, 2003-NMCA-131, ¶¶ 21, 22. Defense counsels' strategic decision was objectively reasonable, and therefore does not support a claim of ineffective assistance of counsel.

**{37}** Notwithstanding the lack of an evidentiary basis for a voluntary intoxication instruction, the decision not to seek such an instruction was a legitimate strategy well within the "wide range of reasonable professional assistance." *Hunter*, 2006-NMSC-043, ¶ 13 (internal quotation marks and citation omitted). At trial, Defendant argued that he was not in attendance at the party at the time of Armstrong's death, and contended in closing arguments that his alibi had been verified by police. For counsel to press this alibi-based argument and simultaneously request a voluntary intoxication instruction could have undermined Defendant's credibility with the jury. Counsel made the strategic decision to pursue a valid theory on Defendant's behalf, and understandably demurred from posing a contradictory theory to the jury. *See Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) ("[C]ounsel's failure to seek an intoxication instruction was reasonable, because the instruction would have conflicted with his chosen trial strategy."); *see also People v. LaVearn*, 528 N.W.2d 721, 724-25 (Mich. 1995) (per curiam) (rejecting an ineffective assistance claim where counsel made the strategic decision to forego a voluntary intoxication defense and instead pursue a mistaken identity theory). In light of the lack of evidence supporting a voluntary intoxication instruction and counsels' election between competing strategies, this Court will not second-guess counsels' choice of legitimate competing defense theories. *See State v. Crain*, 1997-NMCA-101, ¶ 25, 124 N.M. 84, 946 P.2d 1095 ("[W]e

regard trial counsel's choice and presentation of defenses and defense witnesses as falling within the ambit of trial tactics and strategy."). For the foregoing reasons, we reject Defendant's ineffective assistance of counsel claim.

**F.      Because the Armed Robbery Conviction Implicates Double Jeopardy Concerns, We Vacate the Armed Robbery Conviction.**

**{38}** Finally, Defendant contends that his constitutional protection against double jeopardy was compromised because the district court convicted him of both felony murder and the underlying predicate felony of armed robbery. *See* U.S. Const. amend. V; N.M. Const. art. II, § 15. The bar on double jeopardy serves the obvious purpose of ensuring that a defendant is not punished twice for the same offense. *See State v. Frazier*, 2007-NMSC-032, ¶ 13, 142 N.M. 120, 164 P.3d 1. However, it also serves the important purpose of ensuring that a defendant does not suffer the imposition of multiple convictions for a single offense. *See Schoonmaker*, 2008-NMSC-010, ¶ 50. This Court has acknowledged that the peril inherent in double jeopardy convictions extends beyond the consequences of punishment and sentencing. *See State v. Pierce*, 110 N.M. 76, 87, 792 P.2d 408, 419 (1990). Indeed, a second conviction may expose a defendant to a multitude of harmful "'collateral'" consequences, such as impacting parole eligibility, elevating sentencing for future crimes under repeat offender guidelines, and the "'societal stigma'" that attaches to any conviction. *Id.* (quoting *Ball v. United States*, 470 U.S. 856, 864-65 (1985)). We review double jeopardy claims de novo. *State v. Quick*, 2009-NMSC-015, ¶ 6, 146 N.M. 80, 206 P.3d 985.

**{39}** This Court has set forth a clear procedure by which a district court must protect a defendant's right not to be subjected to double jeopardy. In the event the jury finds a defendant guilty of two crimes arising from the same offense, simply merging the two felonies post-conviction is not enough. *See Schoonmaker*, 2008-NMSC-010, ¶ 50. Rather, the trial judge must explicitly vacate one of the convictions. *Id.* ("[T]he district court was required not only to 'merge' Defendant's convictions . . . but to vacate one of those alternative convictions; simply sentencing Defendant for only one conviction was not enough.") (citing *State v. Mercer,* 2005-NMCA-023, ¶ 29, 137 N.M. 36, 106 P.3d 1283). Under *Schoonmaker*, merging two convictions does not vacate one of them. Thus, the trial judge must both merge *and* vacate an underlying offense to avoid the peril of double jeopardy.

**{40}** In the instant matter, the State argues that no conviction occurred for the underlying offense, so double jeopardy concerns are not implicated. We disagree. Under New Mexico law, a conviction occurs when a defendant is "found guilty by the verdict of the jury [and that verdict is] accepted and recorded by the court." NMSA 1978, § 30-1-11 (1963). Thus, the conviction dovetails with the finding of guilt and it is separate from the subsequent sentencing process. *See Padilla v. State*, 90 N.M. 664, 666, 568 P.2d 190, 192 (1977) ("[A] 'conviction' refers to a finding of guilt and does not include the imposition of a sentence.") (citing *State v. Larranaga*, 77 N.M. 528, 424 P.2d 804 (1967)).

13

**{41}** In the district court's judgment and sentencing order, Judge Eichwald explicitly adjudged Defendant "guilty of [all] offenses," including the underlying armed robbery charge. The order served as an explicit acceptance and recording of the jury's guilty verdicts for both felony murder and the underlying felony of armed robbery, constituting convictions under Section 30-1-11. Because the order constituted a conviction for both counts, *Schoonmaker* required the district court to vacate the underlying armed robbery conviction. *See* 2008-NMSC-010, ¶ 50. Instead, the order merely states that "Count II [(armed robbery)] merges into Count I [(first degree felony murder)]." Even though the order proceeds to impose a sentence only for first degree felony murder, the conviction for armed robbery is not vacated. This oversight runs afoul of double jeopardy concerns by leaving the conviction for armed robbery untouched, and arguably still intact. Accordingly, we vacate the armed robbery conviction.

## III.   CONCLUSION

**{42}** We affirm Defendant's convictions for first degree felony murder, possession of a firearm or destructive device by a felon, and tampering with evidence. We vacate Defendant's conviction for armed robbery.

**{43}   IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for *State v. Garcia*, Docket No. 30,782**

**AT**　　　　　　**Attorneys**

AT-EA　　　　　　Effective Assistance of Counsel

**CT**             **Constitutional Law**

CT-DJ            Double Jeopardy
CT-RC            Right to Counsel

**CL**             **Criminal Law**

CL-FM            Felony Murder
CL-TE            Tampering with Evidence

**CA**             **Criminal Procedure**

CA-EA            Effective Assistance of Counsel
CA-PS            Pro Se
CA-SV            Severance
CA-SE            Sufficient Evidence

**EV**             **Evidence**

EV-TM            Tampering with Evidence
EV-SS            Substantial or Sufficient Evidence