This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**No. S-1-SC-37109**

**Filing Date: May 28, 2020**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**EDER ORTIZ-PARRA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Jeffrey J. Buckles
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Walter M. Hart, III, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**VIGIL, Justice.**

**{1}** Defendant Eder Ortiz-Parra was charged with several crimes for his participation in a shooting that left two men dead and another two men injured. He was tried jointly with his brother Edwin Ortiz-Parra and his cousin Rafael Gonzalez-Parra. Defendant was convicted of two counts of first-degree willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); one count of conspiracy to commit first-degree murder, contrary to NMSA 1978, Section 30-28-2 (1979) and Section 30-2-1(A)(1); one count of kidnapping with a firearm enhancement, contrary to NMSA 1978,

Section 30-4-1 (2003) and NMSA 1978, Section 31-18-16 (1993); and two counts of attempted first-degree willful and deliberate murder with firearm enhancements, contrary to NMSA 1978, Section 30-28-1 (1963) and Section 30-2-1(A)(1). He received two life sentences plus fifty-four years of additional incarceration. He appeals his convictions directly to this Court pursuant to Rule 12-102(A)(1) NMRA.

**{2}** On appeal, Defendant seeks reversal of his convictions and a new and separate trial, arguing that 1) the evidence was insufficient to support his convictions and 2) the district court erred by denying the defendants' requests for separate trials. Because the record does not support Defendant's factual assertions and because the case is otherwise disposed of by established New Mexico law, we exercise our discretion under Rule 12-405(B)(1), (2) NMRA and issue this nonprecedential decision affirming Defendant's convictions.

## I.  SUFFICIENCY OF THE EVIDENCE

**{3}** Defendant first argues that the evidence presented at trial was insufficient to prove that he committed the crimes for which he was convicted. The test for sufficiency of the evidence is well established.

> We review whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. In particular, New Mexico appellate courts will not invade the jury's province as fact-finder by second guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury. So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (alterations, internal quotation marks, and citations omitted).

**{4}** The evidence presented at trial tells the story of two men who were shot and killed and two men who were wounded when Defendant and his brother Edwin entered a house and opened fire. One of the survivors, Jorge Hernandez, provided the following testimony. Jorge, Jose Hernandez, and Juan Carlos Saenz-Ponce were all together at a house, drinking and using drugs. Sometime that evening, Juan Carlos's friend, Daniel Chumacero, arrived. Daniel stayed for seven or eight minutes, drank a beer, and left. Two minutes later, Daniel came back into the house followed by two men Jorge did not recognize. Jorge recalled that both men had handguns and that the first man had his gun to Daniel's back as if to make him walk back into the house. Almost as soon as they entered, the first man shot Daniel in the back, and the second man began firing at Jorge, Jose, and Juan Carlos.

**{5}** Jorge was shot five times before dragging himself to a closet and eventually calling 911. Jose was shot twice and was taken to the hospital. Juan Carlos was shot once in the head and once in the chest, and each shot was independently fatal. Daniel was shot six times, including a fatal shot to his chest.

**{6}** Daniel's girlfriend Mirna Rodriguez-Gutierrez also testified at trial and offered the following account. Mirna accompanied Daniel to a house and remained in the car while Daniel went inside. After about five minutes, Daniel came out of the house and got back into the driver's seat of the car. As Daniel was backing out of the driveway, two cars pulled up and blocked Mirna and Daniel's car. Mirna recognized the first car, which she described as a dark Camaro with white stripes. She recalled that a man she knew as "El Chapo" had come to her house earlier that day in that same car.

**{7}** Four men got out of the cars and yelled at Daniel to exit the car. Mirna did not see the faces of the men who told Daniel to get out of the car, but she recognized one of them as "El Chapo" by his voice. The men who told Daniel to get out of the car had handguns. As Daniel got out of the car, a man Mirna knew as "El Guerro" opened her door and took her cell phone. Daniel and all four men walked into the house, Mirna heard several gunshots through the open door, and everyone other than Daniel ran out of the house and back to their cars. Mirna later identified "El Chapo" as Defendant and "El Guerro" as Carlos Almazan-Avila.

**{8}** Carlos testified at trial that he has known all of the codefendants, Defendant, Edwin, and Rafael, since they were all young children. He explained that Defendant's nickname is "El Chapo," Rafael's nickname is "El Gordo," and that his own nickname is "El Guerro." He testified that they have had these nicknames since childhood. Carlos then testified to the same series of events that Mirna described.

**{9}** On the day of the shooting, Carlos was at home when Defendant and Edwin asked him to come with them to "talk to some guys[.]" Rafael joined the three men, and the four proceeded to the house in two separate cars, with Defendant and Edwin in one and Carlos and Rafael in the other. Defendant and Edwin were in Edwin's dark blue Charger with white lines down the hood and the top of the car. When they arrived at the house, Edwin pulled up behind the car in the driveway, blocking it from leaving. Defendant and Edwin got out and either told Daniel to get out of the car or took him out of the car using "a little bit" of force. It was at this point that Carlos realized that both Defendant and Edwin were armed with handguns.

**{10}** Defendant, Edwin, and Daniel walked into the house while Carlos and Rafael went to the passenger side of the car where Mirna was sitting. Carlos testified that he had seen Mirna before. Because Carlos thought that she might call the police, Carlos and Rafael took Mirna's phone. As he turned to go into the house, Carlos heard gunshots come from inside. Following the gunshots, Defendant and Edwin came running out of the house with the guns in their hands. The four men got back into their cars and left the scene.

**{11}** Defendant's only assertion regarding this evidence is that it was insufficient to prove his identity as one of the men who forced Daniel out of the car and shot Daniel, Jose, Jorge, and Juan Carlos in the house. In support of this assertion, Defendant argues that the witnesses who testified to his participation in the crimes, specifically Mirna and Carlos, were "leaky vessels in which to pour the jury's hopes of learning the truth" and that they should not be believed. Defendant contends that Mirna's testimony that Defendant told Daniel to get out of the car is "dubious" because she identified him by hearing him say one word through the closed doors and rolled-up windows of the car. Regarding Carlos, Defendant claims that he was an "outrageously cynical and self-dealing gamer" who was only testifying as part of a plea deal on other charges. Finally, Defendant points to testimony from other witnesses which he argues is contrary to the version of events given by Mirna and Carlos.

**{12}** Defendant forgets that in reviewing the sufficiency of the evidence, we do not second guess the jury's determinations of credibility or reweigh the evidence presented at trial. *Garcia*, 2011-NMSC-003, ¶ 5. Despite Defendant's representations to the contrary, he is asking us to do just that. Both Mirna and Carlos testified at trial that Defendant was one of the armed men who ordered Daniel out of the car, walked with him into house, and ran out of the house after the gunshots. "[I]ndulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict," we reject Defendant's argument that the evidence was insufficient to prove his identity as one of shooters. *See id.* (internal quotation marks and citation omitted). Furthermore, because Defendant's assertion that only Carlos identified Defendant is incorrect, it is unnecessary to address his argument that we should reconsider our holding in *State v. Hunter*, 1933-NMSC-069, ¶ 6, 37 N.M. 382, 24 P.2d 251, that "the testimony of a single witness may legally suffice as evidence upon which the jury may found a verdict of guilt."

**{13}** For the foregoing reasons, we conclude that the evidence was sufficient to support Defendant's convictions.

## II. SEVERANCE OF RAFAEL GONZALEZ-PARRA

**{14}** Defendant next argues that the district court erred in denying the motions to sever Defendant's trial from the trial of his codefendant Rafael, pursuant to Rule 5-203(C) NMRA. Before trial, Rafael moved to sever his trial from that of Defendant and Edwin on the grounds of conflicting defenses, arguing that he would be defending the credibility of certain witnesses that Defendant and Edwin would be attacking. Defendant joined in Rafael's motion, and later filed his own motion to sever Rafael on the same grounds. The district court denied both Rafael's and Defendant's motions, concluding that neither had established that the codefendants would present irreconcilable defenses.

**{15}** Under Rule 5-203(C), "[i]f it appears that a defendant or the state is prejudiced by a joinder of . . . defendants by the filing of a statement of joinder for trial, the court may . . . grant a severance of defendants, or provide whatever other relief justice requires."

We review a district court's denial of a motion to sever defendants for an abuse of discretion. *Garcia*, 2011-NMSC-003, ¶ 16; *State v. Gallegos*, 2007-NMSC-007, ¶ 18, 141 N.M. 185, 152 P.3d 828. Even if we conclude that the trial court abused its discretion, we "will not reverse unless the error actually prejudiced the defendant." *Gallegos*, 2007-NMSC-007, ¶ 18. A district court abuses its discretion when its ruling is "clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829.

**{16}** On appeal, Defendant repeats his argument that Carlos's testimony forced the codefendants to present conflicting and irreconcilable defenses. In support of this argument, Defendant relies on *State v. Segotta*, in which the Court of Appeals held that severance is required when codefendants present defenses "so antagonistic that a fair trial can be assured only by a severance." 1983-NMCA-054, ¶ 32, 100 N.M. 18, 665 P.2d 280 ("Separate trials are required only when . . . defendants are deprived of the opportunity to present effective defenses."), *rev'd on other grounds State v. Segotta*, 1983-NMSC-092, ¶¶ 1, 10, 100 N.M. 498, 672 P.2d 1129. "[I]nconsistent defenses may support a motion for severance" when the accounts of the defendants are on a "collision course" and "are so contradictory as to raise an appreciable danger that the jury would convict solely on the basis of the inconsistency." *Id.* ¶ 30 (internal quotation marks and citation omitted).

**{17}** In this case, Defendant's argument focuses on Carlos's testimony that Defendant and Edwin were inside the house and Rafael was outside of the house when the shooting occurred. He contends on appeal, as he did before the district court, that this testimony gave Rafael no choice but to defend Carlos's credibility and gave Defendant no choice but to attack it. The record does not support this assertion.

**{18}** In both his opening and closing arguments, Rafael's counsel questioned the credibility of Carlos as a witness. At most, Rafael's counsel argued that even if the jury believed Carlos's testimony, that testimony did not support the charges against Rafael. Defendant did not disagree on the issue of Carlos's credibility. In fact, Defendant's counsel began his closing argument by explicitly agreeing with Rafael's counsel on Carlos's lack of credibility.

**{19}** Contrary to Defendant's assertion, the jury was not presented with the "spectacle" of Defendant attacking Carlos's credibility while Rafael defended it. As such, we need not determine whether such a circumstance would support severance under the standard articulated by the Court of Appeals in *Segotta*. On this record, we cannot conclude that the district court's denials of the motions to sever Rafael were "clearly untenable and not justified by reason" and we therefore reject Defendant's request for a new trial. *See Rojo*, 1999-NMSC-001, ¶ 41.

## III.    CONCLUSION

**{20}** For the foregoing reasons we reject Defendant's arguments that the evidence was insufficient to prove his identity as one of the shooters and that the district court

erred by declining to sever the codefendants. Accordingly, we affirm Defendant's convictions.

**{21}    IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**