This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: November 16, 2020**

**No. S-1-SC-37415**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GREGORY VALENZUELA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Bennett J. Baur, Chief Public Defender
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

### DECISION

**VIGIL, Justice.**

**{1}** The sole issue in this case is whether sufficient evidence of deliberation supports Defendant Gregory Valenzuela's conviction of first-degree, willful and deliberate murder for the killing of Adrian Acosta (Victim). Defendant appeals his conviction directly to this Court. For the reasons explained herein, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Defendant acted with the deliberate intent to kill. We therefore affirm Defendant's conviction of first-degree murder.

## I.     BACKGROUND

**{2}**     Defendant killed Victim in the presence of two witnesses: Defendant's young son (Son) and Son's maternal grandmother (Grandmother). Both witnesses testified that they were in the company of Defendant immediately before, during, and for hours after the killing. While in police custody, Defendant made several statements admitting to the killing and boasting about the crime. These statements were admitted at trial. The evidence tells the following story.

**{3}**     On the day of the killing, Defendant and Victim visited Grandmother to inquire if Victim might rent a room in her house. Grandmother agreed, and the men left to buy some food for the house. Later that day, Defendant and Victim returned to Grandmother's house, and the three smoked methamphetamine together. The two men drank alcohol. Then, all three adults left to pick up Son from school. With Son now in tow, the group returned to the house and sat again at the kitchen table.

**{4}**     The kitchen had two areas. A small hallway contained the stove, sink, and cabinets. A partial wall separated that hallway from the dining area where the table was placed. While everyone was seated at the kitchen table, Victim called Son over to him. Grandmother testified that in the moments before Victim called Son over, Son had been crying because he wanted to go to his other grandmother's house to play video games. Son testified that he went over to Victim to show him an injury, which Son had sustained in a fall the day before. Son explained that while still seated at the table, Victim hugged Son from behind and then kissed him on the forehead.

**{5}**     According to Grandmother, Defendant told Son to move away from Victim, which he did. Son testified that Defendant asked him whether Victim had "swooshed a kiss at [him]." Defendant then moved two chairs from the table and placed them in the hallway area of the kitchen. He told Grandmother and Son to sit in those chairs, which they did. Defendant then turned his attention to Victim.

**{6}**     Grandmother testified that Defendant spoke in Spanish to Victim, saying, "How dare you do what you did to my son?" Grandmother explained that Victim was "too far gone" to respond and just sat in the chair during the attack that followed. According to both witnesses, Defendant took out the knife he usually carried in a holster in his back pocket and started cutting Victim's neck. Son testified that Victim eventually fell from his chair to the floor, where Defendant stabbed him in the waist area. According to Grandmother, at one point in the attack, Defendant paused and said, "Look at him, he's still breathing," before proceeding to stab Victim with the knife.

**{7}**     Victim died of sharp trauma caused by multiple knife wounds. He was stabbed or cut eight times on the neck and head and four times on his lower back and received, in addition, multiple specific contusions and abrasions. Victim's internal jugular veins were cut open.

**{8}**     Following the killing, according to Grandmother, Defendant covered the body with a bedspread but did not remove the body from the house. Defendant then fled the

house, bringing Grandmother and Son with him. The group eventually arrived at Defendant's friend's trailer outside of town, where Defendant dug a hole outside and burned his knife, clothes, and shoes, Son's clothes and shoes, and Grandmother's shoes and phone. Later that night, the group returned to Grandmother's neighborhood where Grandmother told police that Defendant had killed Victim.

**{9}**    Once taken into investigative detention, Defendant spoke to police about the killing. Officer Kyle McCauley testified that while Defendant was in the booking area of the police department, Defendant said to him, "You think it's funny now, until I have you begging for your life, then I'll be laughing, ask the last guy." A video recording of Defendant's interview with police detectives was admitted at trial. During the interview, Defendant initially lied about and denied his involvement in the killing, before ultimately admitting that he killed Victim in response to Victim's touching of Son. Once he admitted to the killing, Defendant said that he would kill Victim again if he had to, emphasizing that he would "do it again and again."

**{10}**    Defendant was charged with first-degree, willful and deliberate murder. The jury was instructed on first and second-degree murder, voluntary manslaughter, and tampering with evidence. The jury returned guilty verdicts for first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), and two counts of tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003).

**{11}**    Because Defendant received a life sentence, he appealed his conviction of first-degree murder directly to this Court pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. As the question of law in this case is sufficiently answered by New Mexico precedent and "substantial evidence disposes of the issue[,]" we exercise our discretion under Rule 12-405(B)(1)-(2) NMRA to explain our conclusion by way of this nonprecedential decision.

## II.    DISCUSSION

**{12}**    Murder in the first degree is defined, in pertinent part, as "the killing of one human being by another without lawful justification or excuse . . . by any kind of willful, deliberate and premeditated killing[.]" Section 30-2-1(A)(1). Conceding that the killing was both willful and premeditated, Defendant argues solely that his conviction of first-degree murder was not supported by substantial evidence that the killing was "deliberate." For the reasons that follow, we reject Defendant's argument.

## A.    Standard of Review

**{13}**    Our standard of review for sufficiency of the evidence is well-established and highly deferential to the jury's verdict.

> We review whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable

inferences and resolving all conflicts in the evidence in favor of the verdict. In particular, New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury. So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (brackets omitted) (internal quotation marks and citations omitted).

## B.      Substantial Evidence of Deliberation Supports Defendant's Conviction

**{14}**    The jury in this case was instructed that to find Defendant guilty of a deliberate killing, it must find that Defendant "weigh[ed] and consider[ed] the question of killing and his reasons for and against such a choice." UJI 14-201 NMRA. The jury was further instructed that (1) "[a] deliberate intention may be inferred from all of the facts and circumstances of the killing[,]" (2) "[a] calculated judgment and decision may be arrived at in a short period of time[,]" and (3) "[a] mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill." *Id.* When considering whether a defendant killed deliberately, the jury may rely on circumstantial evidence. *State v. Guerra*, 2012-NMSC-027, ¶ 28, 284 P.3d 1076.

**{15}**    Defendant asserts, citing *State v. Adonis*, that the killing was done "rashly or impulsively, rather than deliberately," which would support a conviction of second-degree murder but is not enough to sustain a conviction of murder in the first degree. *See* 2008-NMSC-059, ¶ 16, 145 N.M. 102, 194 P.3d 717. He urges us to isolate the requirement of deliberation from the other elements of first-degree murder and assess whether the State presented sufficient evidence that Defendant had "*carefully weighed* the alternative of killing versus not killing."

**{16}**    We specifically addressed the type of evidence required for the State to prove a deliberate killing in *State v. Guerra*, 2012-NMSC-027, ¶¶ 25-29. In *Guerra*, we affirmed a conviction of first-degree murder in the face of the defendant's challenge—similar to Defendant's claim in this case—that insufficient evidence supported a finding of deliberation. *Id.* The defendant in *Guerra* killed his victim by stabbing him thirteen times and wounding vital organs. *Id.* ¶ 29. The evidence showed that the defendant had rendered the victim defenseless by pinning the victim's arm over his head, thereby exposing his chest to attack. *Id.* The jury also heard evidence that the defendant expressed no remorse following the killing and seemed to celebrate his crime. *Id.* All of this evidence, we concluded, was sufficient to support a conviction of willful and deliberate murder. *Id.*

**{17}**    Likewise, in *State v. Flores*, we held that a conviction of willful, deliberate and premeditated first-degree murder was supported, in part, by evidence that the defendant (1) "stabbed [his victim] so many times that it evidenced an effort at overkill," (2)

disposed of evidence, (3) fled from the scene and (4) attempted to "deceive and evade the authorities." 2010-NMSC-002, ¶ 22, 147 N.M. 542, 226 P.3d 641.

**{18}** Having cited *Flores* for the proposition that evidence of overkill, alongside other evidence, may be used to support a finding of deliberation, we pause to address Defendant's request that we reassess our jurisprudence as it relates to overkill evidence. Specifically, Defendant asks that we revisit our conclusion in other cases that overkill evidence may support a jury's finding of deliberate intent to kill. See, e.g., id.; Guerra, 2012-NMSC-027, ¶ 29. Defendant asserts that other state courts consider evidence of multiple deadly wounds to indicate a crime of passion, as opposed to a premeditated and deliberate murder. Because this case is rife with other evidence, beyond evidence of overkill, to support the jury's verdict, we reject Defendant's invitation to overrule precedent. The number of stab and incise wounds Defendant inflicted on Victim is one of several pieces of evidence upon which the jury may have rested its finding that Defendant killed deliberately.

**{19}** The jury reasonably may have relied on any of the following evidence to support a finding of deliberation in this case: (1) Defendant took several calculated steps prior to the killing, including calling his son over to him to inquire about Victim's actions, moving chairs to an adjacent room, telling Son and Grandmother to sit in those chairs, and accusing Victim of harming his son, (2) Defendant stabbed or cut Victim twelve times, puncturing Victim's jugular veins, (3) Victim was defenseless during the attack as a product of his inebriation, (4) Defendant paused to comment that Victim was "still breathing" before continuing to stab and cut him, (5) Defendant fled the scene and destroyed evidence, (6) Defendant initially lied to police about his involvement in the killing, (7) once he admitted to the killing, Defendant told police that he would kill Victim "again and again." Altogether, this is substantial evidence to support a finding that Defendant committed a deliberate murder. Accordingly, we will not disturb the jury's guilty verdict. See Garcia, 2011-NMSC-003, ¶ 5.

## III.    CONCLUSION

**{20}** Because substantial evidence supported the jury's finding of deliberation, we affirm Defendant's conviction of first-degree, willful and deliberate murder.

**{21}    IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**