NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois  60604

Argued May 8, 2009

Decided July 29, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3412

| | |
|---|---|
| JAMES P. DUNCAN, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellant*, | |
| *v.* | No. 02 C 08990 |
| GREGORY SCHWARTZ, WARDEN, | Charles R. Norgle, *Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

James Duncan was convicted of armed robbery after a jury trial in Illinois state court.  After exhausting his state appellate remedies, Duncan filed a habeas petition in the district court, claiming that he was denied his right to represent himself during the trial.  The district court denied his petition.  Duncan appeals, and we affirm.

I.

An inch of snow blanketed the ground in Calumet City, Illinois, on February 26, 1994, as Harold Verrill, a 69-year-old bartender, arrived for work at the Old Homestead Tavern. Around 7:00 a.m., while filling an ice bin behind the bar, Verrill heard a voice behind him say: "Lay flat on the floor, face down. Don't move or I'll shoot you." Verrill turned around and saw James Duncan standing on top of the bar. Duncan repeated his demand and brandished a blue-barreled gun. After Verrill lay on the ground, Duncan broke into a drawer containing bundles of one- and five-dollar bills and fled with the money. Verrill then telephoned the police.

Prior to the robbery, at approximately 6:40 a.m., three officers of the Calumet City Police Department observed suspicious boot prints in front of a tavern named Dick's Are You Crazy ("Dick's"). When Verrill called the police, two of these officers—Kevin Glaser and Steve Lundy—hurried to the Old Homestead, which was about a block away, while the other officer—Gary Devaney—remained in front of Dick's. At the Old Homestead, Officer Kevin Glaser interviewed Verrill, who described the robbery and noted that the culprit was a white male, about 40 years of age, wearing a black jacket, jeans, and black shoes. Glaser also observed that boot prints found inside the bar matched those in front of Dick's. After radioing in a report, Glaser found identical boot prints outside the Old Homestead. The prints led to tire tracks. Glaser then radioed this new discovery.

Shortly after receiving the two radio reports, Devaney observed Duncan park a car near Dick's and enter a building. Realizing that Duncan matched the description of the robber, Devaney hurried to Duncan's car and examined the boot prints Duncan had left behind. They matched those prints in front of Dick's, which matched those at the Old Homestead. After Devaney called for back-up, Glaser, Devaney, and Lundy entered the building. They knocked on the door of an apartment and the resident allowed them to enter. Duncan emerged from a bedroom, shirtless and wearing blue jeans that were wet at the cuffs. The officers placed Duncan under arrest after Devaney identified him. When Glaser picked up a black leather jacket lying next to Duncan, a bundle of one- and five-dollar bills fell from the jacket. Next to the jacket was a pair of boots whose prints matched those from the Old Homestead. The officers also found a .44 caliber pistol in Duncan's car.

Duncan was charged in Illinois state court with armed robbery and two trial counsel were appointed. Prior to trial, Duncan moved *pro se* to assist in his representation as co-counsel. However, the day before trial Duncan informed the court that he was withdrawing the motion. The trial began the next day. After Verrill and Glaser testified

and were cross-examined by defense counsel, Duncan had the following exchange with the trial court:

> Duncan: Your Honor, I would like the record to . . . reflect that there is a lot of discrepancies involved that has not been brought up during the course of these hearings.  Now, he has no intention[] of recalling these particular two witnesses. There is testimony that they, both of these officers made previously that are totally contradictory to what they're saying right now and they said it under oath. He isn't bringing this up.
> I believe I am receiving ineffective assistance of counsel.  I don't want to slow this trial down, I want to get it out of the way. I would like to represent myself.  If you want to make these guys co-counsels -
>
> Court: What do you mean, you want to represent yourself?
>
> Duncan: I would like to cross-examine the witnesses and I would like to recall them.
> Court: Your motion is denied. . . . Your motion is denied to represent yourself at this point.

Trial resumed and the state prosecutor presented testimony from Devaney and the officer who searched Duncan's car.  Following their testimony, Duncan renewed his request:

> Duncan: Your Honor, I would like to reiterate my request to proceed pro se. . . . My attorney is digging my hole because he is not bringing out certain facts that are involved in this case. . . . I believe I have a right to defend myself to the best of my ability or have representation that can represent me effectively and advise me of what they're doing. . . . If I do represent myself, I would like to also point out that I have a bit of knowledge about the law . . . . So, based upon these facts I ask to represent myself.
>
> Court: You can discuss your trial strategy with your lawyer and your motion is denied.

The next morning Duncan again asserted his dissatisfaction:

> Duncan: I will reiterate my request to proceed pro se.
> . . .

Court: So you want to continue the trial and represent yourself through the duration of the trial?

Duncan: Yes, Your Honor.

Court: You want to continue in this trial and represent yourself, is that what you want to do?

Duncan: With some exceptions. I would like certain witnesses recalled.

After indicating that he intended to recall three of the witnesses called by the state prosecutor, Duncan stated his belief that he could show that it was impossible for Verrill to accurately identify him and that he could show that Verrill had been coached by the prosecutors. Duncan continued:

Duncan: These questions have to be addressed. These attorneys here haven't addressed these things. They finally explained their trial strategy to me last night and today and I don't agree with it. I think it's ludicrous. . . .

The point here is I believe I can represent myself: perhaps [not] as effective as these attorneys were if I was paying them $50,000 each, but I can represent myself. My maximum amount of ability to represent myself, it would fall way above what they're doing right now . . . .

I'm not saying I would like to have these attorneys here as co-counsels. If the Court wants to have them here as co-counsels, they already explained that they wouldn't want to do this.

Explaining that he suffered from back problems, Duncan stated, "I would like to have somebody here to illustrate some points that would take physical movement before the victim." The trial court denied his request, stating:

Court: You have a constitutional right to represent yourself, and defendants do that in this very courtroom, represent themselves, after they were strongly admonished . . . . It's up to you. Many times things to the layman look like one thing and within the scope of the law they are completely something else. But those are things that I would address if it was timely.

. . .

> I don't know what [Duncan's attorneys'] trial strategy is. I just know that I am not going to allow you in midstream to now switch and represent yourself.
>
> . . .
>
> Your motion to represent yourself is denied.

The prosecutor rested and Duncan testified on his own behalf. The jury convicted Duncan of armed robbery and he was sentenced to 40 years' imprisonment.

The Illinois Appellate Court affirmed Duncan's conviction in 1998, and the Illinois Supreme Court denied his petition for discretionary review. Duncan then petitioned the state courts for collateral relief, raising the issue of the trial court's denial of his request for self-representation. Specifically, Duncan contended that his original appellate attorney's failure to raise the self-representation issue on direct appeal constituted ineffective assistance of counsel. The state trial court denied this petition. The Illinois Appellate Court affirmed in 2001, stating:

> [T]he record shows [Duncan] did not request complete self-representation until his motion for a new trial. . . . [The trial court] in the present case denied defendant's request that his attorneys act as co-counsel, rather than defendant acting as co-counsel. Nevertheless, . . . denial of defendant's request for hybrid representation was not a violation of his constitutional right to self-representation . . . .

The Illinois Supreme Court declined to exercise discretionary review.

Duncan then filed a petition for habeas relief in the North District of Illinois. Duncan raised several claims for relief, including an assertion that the trial court denied him his right to self-representation as guaranteed by *Faretta v. California*, 422 U.S. 806 (1975). The district court denied Duncan's petition. On the self-representation issue, the district court held that the conclusion of the Illinois Appellate Court that Duncan had requested "hybrid representation"—to represent himself as co-counsel with his attorney—was not an unreasonable determination of the facts. Because Duncan had requested hybrid representation, the district court held that the Illinois Appellate Court did not unreasonably apply Supreme Court precedent in concluding that it was permissible to deny Duncan's request. Duncan now appeals the denial of his petition for habeas relief, solely raising the self-representation issue.

II.

Duncan asserts a denial of his right to self-representation, as guaranteed by the Sixth Amendment. Because the Illinois Appellate Court reached the merits of this issue, we review this appeal under 28 U.S.C. § 2254(d), which states that habeas relief

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In reviewing a claim for habeas relief under this subsection, "'[a] state-court decision is contrary to [the Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.'" *Johnson v. Pollard*, 559 F.3d 746, 752 (7th Cir. 2009) (quoting *Brown v. Payton*, 544 U.S. 133, 141 (2005)).

Duncan bases his appeal on *Faretta*, which held that the Sixth Amendment "grants to the accused personally the right to make his defense." 422 U.S. at 819. A defendant's assertion of his right to self-representation must be made "clearly and unequivocally." *Id.* at 835. This court has noted the "basic principle" that "the district court has broad discretion in granting mid-trial requests to proceed pro se." *United States v. Kosmel*, 272 F.3d 501, 506 (7th Cir. 2001).

Here, the Illinois Appellate Court held that Duncan had requested "hybrid representation." That is, the state court concluded that Duncan desired to retain his appointed counsel and also to act as co-counsel for himself at the same time. Assuming for the moment that Duncan in fact requested hybrid representation, the state court's conclusion that Duncan's Sixth Amendment rights were not violated was not contrary to or an unreasonable application of *Faretta*, which merely guaranteed a defendant's right to defend himself personally. The Supreme Court has not held that the Sixth Amendment guarantees a defendant the right to proceed as co-counsel to his appointed counsel. Indeed, this court has stated that such hybrid representation is "clearly disfavor[ed]." *Kosmel*, 272 F.3d at 506.

That leaves Duncan to attack the state appellate court's factual finding that he requested hybrid representation. On appeal, Duncan contends that he did not seek hybrid representation but rather that he was asserting the right to represent himself alone.

With regard to a state appellate court's determination of facts, "[w]e presume state factual findings to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1) and *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)). In this case, Duncan's three requests in the trial court were divergent and unclear. Prior to trial, Duncan had moved to represent himself with co-counsel. In his first request for self-representation at trial, Duncan began by saying, "I would like to represent myself," but then immediately added the caveat, "If you want to make these guys co-counsels." His further statement that "I would like to cross-examine the witnesses and I would like to recall them" also suggested that Duncan wanted a limited appointment as co-counsel for those purposes only. Thus, his initial request was equivocal.

His second request was more clear. Duncan began by saying, "I would like to reiterate my request to proceed pro se." He further stated, "I believe I have a right to defend myself to the best of my ability," and concluded, "So, based upon these facts I ask to represent myself." These comments indicate a more clear assertion of his right to self-representation. However, this second request did not occur in a vacuum. In his first request during trial, Duncan had sought to represent himself as co-counsel, and the trial court could consider this second request in light of the previous one. Because we presume the findings of fact of the state courts are correct and we will only overturn a state court's factual finding if clear and convincing evidence demonstrates that the finding was unreasonable, *Ben-Yisrael*, 540 F.3d at 546, we conclude that the Illinois Appellate Court's conclusion that Duncan had requested hybrid representation was not unreasonable.

Duncan's third request was also equivocal. Although he began by stating, "I will reiterate my request to proceed pro se," Duncan immediately qualified that statement by noting that he wished to represent himself "with certain exceptions"; namely, he wanted "certain witnesses recalled." Later in the colloquy, Duncan seemed to swing back to total self-representation, stating, "I can represent myself." He also stated, "I'm not saying I would like to have these attorneys here as co-counsels," but then stated that the reason for his choice was that the attorneys did not wish to function in that capacity. On the whole, Duncan has not produced clear and convincing evidence that would rebut the presumption in favor of the state appellate court's factual findings. Hence, the factual findings of the state appellate court did not constitute an unreasonable determination of the facts based on the record.

Moreover, even if Duncan did not request hybrid representation, an alternative rationale supports the Illinois Appellate Court's conclusion. We have previously indicated that a habeas petition may be rejected under a different legal standard than that used by the state court, if "the proper standard results in the same conclusion." *Malinowski v. Smith*, 509 F.3d 328, 339 (7th Cir. 2007). We have held, applying *Faretta*, that when a criminal defendant requests self-representation after the trial has begun, a trial court "has broad discretion in granting mid-trial requests to proceed pro se." *Kosmel*, 272 F.3d at 506. The trial court must "balance the interests of the defendant against the potential disruption of the proceedings already in progress." *Id.* Here, all of Duncan's requests came after his trial had begun and witnesses had already testified. The state trial court noted that Duncan's mid-trial requests were not timely. After considering Duncan's interest in self-representation, the trial court rejected his requests, stating that Duncan would not be allowed to suddenly alter his representation "in midstream." We conclude that the state trial court did not abuse its discretion in denying Duncan's mid-trial requests for self-representation, and hence the Illinois Appellate Court did not unreasonably apply Supreme Court precedent when it affirmed the denial of Duncan's petition for collateral relief.

Duncan also faults the state trial court for failing to undertake the proper *Faretta* inquiry. He argues that, assuming his statements were ambiguous, the state trial court "should have conducted a *Faretta* inquiry to determine what [he] actually requested." For support, he cites *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991). However, Duncan misstates the nature of the *Faretta* inquiry. *Faretta* requires a court to determine whether a defendant's decision to represent himself has been made with knowledge of the pitfalls of his choice. 422 U.S. at 835. *Faretta* does not require a more searching inquiry whenever a defendant makes ambiguous, equivocal statements that could potentially be construed as indicating a desire for self-representation. As *Berkowitz* makes clear, the *Faretta* inquiry merely requires a court to "assess whether a defendant has knowingly and voluntarily waived counsel" when that waiver has been made clearly and unequivocally. 927 F.2d at 1383; *see also Dunn v. Johnson*, 162 F.3d 302, 307 (5th Cir. 1998) (stating that *Faretta* requires that "[t]he defendant should be made aware of the dangers and disadvantages of self-representation"). Accordingly, this argument fails as well.

III.

The Illinois Appellate Court did not unreasonably determine that Duncan sought hybrid representation in the state trial court. Because *Faretta* only guarantees a defendant's right to represent himself and does not guarantee hybrid representation, the Illinois Appellate Court's rejection of Duncan's *Faretta* argument was not an unreasonable application of federal law as determined by the Supreme Court. Accordingly, the decision of the district court denying Duncan's habeas petition is **AFFIRMED**.