# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 2, 2018

**NO. A-1-CA-35355**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ERNEST BRYAN BARELA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci E. Beyer, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}** Defendant Ernest Bryan Barela appeals the district court's denial of his motion to proceed pro se, made after years of delay and on the morning trial was set to begin, and raises a claim of ineffective assistance of counsel. We affirm.

## I. BACKGROUND

**{2}** Defendant was charged with residential burglary, unlawful taking of a motor vehicle, stalking, larceny, and escape or attempt to escape from a peace officer on June 21, 2012. Defendant's charges stemmed from an event on May 22, 2012, involving Defendant's ex-girlfriend, E. Ramirez. Defendant and Ms. Ramirez had been involved in a two-year relationship and had a child together in March 2012. However, Ms. Ramirez ended their relationship in early May 2012.

**{3}** Ms. Ramirez testified during Defendant's trial that, on May 22, 2012, as she went inside her mother's house—a mobile home with an attached garage—and attempted to close the door behind her, Defendant pulled the door from the outside and tried to open it. Defendant asked Ms. Ramirez to open the door so they could talk. Ms. Ramirez told him to leave or she was going to call 911. However, Defendant persisted and said he wanted to see their child. Ms. Ramirez refused to open the door but told Defendant that he could see their child through the glass.

{4}      Ms. Ramirez testified that Defendant then pulled a pocket knife and threatened to cut his own throat. Ms. Ramirez still would not open the door and told Defendant that she would call his father to give him a ride home. After Defendant threatened to beat her up, Ms. Ramirez hid inside her mother's garage and called 911. Ms. Ramirez stayed inside the garage and heard Defendant trying to open the door to the garage. Shortly thereafter, Deputy Sheriff Paul Telles arrived at the house but was unable to find anyone else inside. Ms. Ramirez then left the garage and noticed that her purse, wherein she kept her car keys and credit cards, and vehicle were missing.

{5}      On June 6, 2012, Deputy Telles went to Defendant's home to serve an arrest warrant on Defendant. While there, Deputy Telles spoke with Defendant's father who informed Deputy Telles that he had no contact with Defendant. After receiving permission from Defendant's father, Deputy Telles searched the home to ensure Defendant was not inside. Deputy Telles found Defendant hiding inside one of the kitchen's cabinets and placed him under arrest.

{6}      Following his arraignment on July 2, 2012, Defendant requested a new attorney on three separate occasions. On January 9, 2013, Defendant requested a new attorney one day before trial was scheduled to begin. On March 17, 2014, he requested a new attorney two days before trial was scheduled to begin. On February 13, 2015, Defendant requested a new attorney the day he was scheduled to attend a pre-trial

conference in district court. On all three occasions, the district court granted Defendant's request, allowed defense counsel to withdraw, gave Defendant more time to retain new representation, and gave new defense counsel more time to prepare for trial. Defendant's actions caused his case to be delayed for over three years from the date of his arrest. By the third request, the new judge assigned to Defendant's case explicitly told Defendant that he was causing his case to be delayed.

{7}     During a hearing on March 2, 2015, Defendant appeared without an attorney and without having applied to the public defender's office, despite the district court's order to do so for a fourth public defender. After the district court informed Defendant that a private attorney with whom he had spoken would not be representing him and that he would need to hire a public defender, Defendant asked, "And I can't represent myself? That's what you're saying?" Defendant agreed to go to the public defender's office despite his desire to have the private attorney represent him. Robert Turner, a contract attorney for the public defender's office, entered his appearance as Defendant's new counsel. The district court scheduled Defendant's trial for August 10, 2015.

{8}     During a pre-trial hearing on August 6, 2015, at which Defendant failed to appear, Mr. Turner notified the district court that he needed to briefly interview two officers prior to trial and could do it the morning of trial because he had already

prepared based on their reports. Mr. Turner notified the district court in advance that he would have an associate in his office work on the case and that his associate did not need to interview Ms. Ramirez.

{9}     On the morning of trial, Mr. Turner's associate, August Rane, appeared with Defendant. Defendant requested to represent himself, stating that he and Mr. Turner had spoken a great deal already and that Mr. Rane had not spoken with him before the day of trial, had not interviewed the witnesses in the case, and did not know the facts that Mr. Turner knew. However, Mr. Rane informed the district court that he had discussed the case with Mr. Turner, read all of the interviews, prepared the case, and would need only a few minutes to interview one officer. The district court inquired into Defendant's competence and basis for such a request, and informed him of the potential pitfalls of self-representation, the nature of the charges, and possible penalties associated with each offense. The district court then asked Defendant if he was ready to proceed to trial that morning. Defendant responded that he was not ready, at which point the district court denied Defendant's motion for self-representation. The district court stated the untimeliness of Defendant's motion and his lack of preparation as some of the reasons it was denying his motion. The district court then permitted Mr. Rane some time to interview an officer.

4

{10}    The parties proceeded to trial with Mr. Rane representing Defendant. The jury returned a verdict of guilty of stalking and escape or attempted escape from a peace officer, but acquitted him of all other charges.

## II.    DISCUSSION

{11}    Defendant now asks this Court to reverse his convictions and remand for a new trial based on both the district court's denial of his motion for self-representation and his claim of ineffective assistance of counsel.

### A.    Right to Self-Representation

{12}    Defendants have a constitutional right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Garcia*, 2011-NMSC-003, ¶ 24, 149 N.M. 185, 246 P.3d 1057. To proceed pro se, a defendant must (1) "clearly and unequivocally" assert his intention to represent himself, (2) make his assertion in a timely fashion, and (3) "knowingly and intelligently" waive his right to counsel. *Garcia*, 2011-NMSC-003, ¶ 25. However, a defendant may not invoke his right to self-representation "to cause delay or thwart the orderly and fair administration of justice." *Id.* (internal quotation marks and citation omitted). The district court is free to reject a motion for self-representation on any of these independent grounds. *Id.* ¶ 30. We review de novo whether a defendant made a valid knowing, intelligent, and voluntary waiver of his constitutional right to counsel. *State v. Reyes*, 2005-NMCA-

5

080, ¶ 6, 137 N.M. 727, 114 P.3d 407. We review for clear error the factual findings underlying the district court's decision to deny a defendant's motion for self-representation. *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017).

{13}     Defendant did not clearly and unequivocally assert his intention to represent himself on March 2, 2015. The requirement that a defendant clearly and unequivocally assert his intent to represent himself is "necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation." *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000) (internal quotation marks and citation omitted). "[W]e indulge in every reasonable presumption against waiver[,]" *Simpson*, 845 F.3d at 1046 (internal quotation marks and citations omitted), and "must ascribe a 'constitutional primacy' to the right to counsel" during "ambiguous situations created by a defendant's vacillation," *Mackovich*, 209 F.3d at 1237 (internal quotation marks and citations omitted). Moreover, the district court is not required to clarify an equivocal request. *See Simpson*, 845 F.3d at 1051 ("[W]e have never required a district court to clarify an equivocal request."); *Duncan v. Schwartz*, 337 F. App'x 587, 593 (7th Cir. 2009) ("*Faretta* does not require a more searching inquiry whenever a defendant makes ambiguous, equivocal statements that could potentially be construed as indicating a desire for self-representation."). Defendant's brief inquiry into his right to represent

himself did not amount to a clear, unequivocal assertion of that right, especially given his stated intent of retaining private counsel.

{14} The district court did not err in finding that Defendant's August 10, 2015, motion to represent himself was untimely. When a clear, unequivocal request for self-representation is made in advance of trial, the defendant is "presumptively entitled to the right." *Garcia*, 2011-NMSC-003, ¶ 26. However, that presumption can be overcome where a defendant's motion is used as a tactic to secure delay. *See United States v. Tucker*, 451 F.3d 1176, 1181 (10th Cir. 2006) ("[A] motion for self-representation is timely if it is made before the jury is impaneled, unless it is a tactic to secure delay."); *Avila v. Roe*, 298 F.3d 750, 753 (9th Cir. 2002) ("[A] *Faretta* request is timely if made before jury impanelment, unless it is shown to be a tactic to secure delay." (internal quotation marks and citations omitted)); *Chapman v. United States*, 553 F.2d 886, 887 (5th Cir. 1977) ("We hold that a demand for self-representation must be honored as timely if made before the jury is selected, absent an affirmative showing that it was a tactic to secure delay."). "A court may consider events preceding a motion for self-representation to determine whether the request is made in good faith or merely for delay." *United States v. George*, 56 F.3d 1078, 1084 (9th Cir. 1995).

{15}     Here, the record supports the district court's finding that Defendant's motion was untimely. Defendant made repeated requests for a new attorney and was granted several continuances for his trial. Based on Defendant's three prior requests for new counsel, his repeated continuances resulting in a three-year delay, the timing of his pro se motion, and the probable need for a continuance because of his unpreparedness, the district court did not err in its decision to deny Defendant's motion. *See Marshall v. Taylor*, 395 F.3d 1058, 1061-62 (9th Cir. 2005) (holding that a defendant's motion to represent himself was untimely when made the day trial was set to commence, after several continuances of his trial, and with no facts to show that his last-minute request was reasonable); *United States v. Gipson*, 693 F.2d 109, 112 (10th Cir. 1982) (holding that a defendant's request that his attorney be dismissed, made on the morning of his trial, coupled with his previous rejection of four different public defenders without any credible explanation, were suggestive of "a pattern of delaying tactics"), *overruled on other grounds by United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990); *People v. Windham*, 560 P.2d 1187, 1191 n.5 (Cal. 1977) (in bank) ("We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself

and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request.")

{16} Defendant argues that the New Mexico Constitution grants greater protection for a defendant's right to self-representation. Defendant has not satisfied his burden to seek greater protection under the New Mexico Constitution than is provided under the Sixth Amendment of the United States Constitution. When a state constitutional right has not already been interpreted more expansively than its federal counterpart, a defendant "must assert in the trial court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision." *State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (emphasis omitted). Defendants do have a right to self-representation under the New Mexico Constitution. *See* N.M. Const. art. II, § 14 ("In all criminal prosecutions, the accused shall have the right to appear and defend himself in person[.]"); *Garcia*, 2011-NMSC-003, ¶ 24. New Mexico's courts have not interpreted this right more expansively than its federal counterpart. Defendant argues on appeal that New Mexico's historical emphasis on self-reliance and independence, as well as the explicit grant of a defendant's right to self-representation, indicate a greater protection under the state constitutional provision. However, the record does not indicate that Defendant argued

9

for greater protections under Article II, Section 14 of the New Mexico Constitution in the district court. We therefore do not address this argument.

**B.     Ineffective Assistance of Counsel**

{17}     "Criminal defendants are entitled to reasonably effective assistance of counsel." *State v. Crocco*, 2014-NMSC-016, ¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). To establish a prima facie case of ineffective assistance, a defendant must first "show that counsel's performance fell below that of a reasonably competent attorney[.]" *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. Second, a defendant must show that counsel's deficient performance prejudiced the defense "such that there was a reasonable probability that the outcome of the trial would have been different." *State v. Hobbs*, 2016-NMCA-006, ¶ 21, 363 P.3d 1259 (internal quotation marks and citation omitted). Our Supreme Court has expressed a preference for bringing ineffective assistance claims through habeas corpus proceedings, rather than on direct appeal. *State v. Schoonmaker*, 2008-NMSC-010, ¶ 31, 143 N.M. 373, 176 P.3d 1105, *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 38, 332 P.3d 850. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes

a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "We review the legal issues involved with claims of ineffective assistance of counsel de novo and defer to the findings of fact of the district court if substantial evidence supports the court's findings." *Hobbs*, 2016-NMCA-006, ¶ 18 (alterations, omissions, internal quotation marks, and citation omitted). Defendant cites four different perceived errors by counsel to support his claim of ineffective assistance. We address each in turn.

{18}     Defendant first asks this Court to take judicial notice of its February 16, 2017, order, sanctioning Mr. Turner for not filing an acceptable docketing statement. However, Defendant has failed to show how Mr. Turner's performance on appeal impacted the outcome of his trial.

{19}     Defendant next asserts that Mr. Turner was ineffective, and Defendant was therefore prejudiced, in failing to file a motion for self-representation on behalf of Defendant after learning of his intention to proceed pro se. However, we have no basis in the record to conclude that Mr. Turner knew of Defendant's intention to proceed pro se. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *State v. Jim*, 2014-NMCA-089, ¶ 29, 332 P.3d 870 ("While we are willing to review matters of record for prima facie evidence of ineffective assistance

11

of counsel, we will not afford the same benefit to arguments based on matters outside the trial record." (internal quotation marks and citation omitted)). Defendant has also failed to show that the outcome of the trial would have been different had Mr. Turner filed such a motion on Defendant's behalf, especially in light of the jury's acquittal of three of the five charges. *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (recognizing that, when exercised, the right to self-representation "usually increases the likelihood of a trial outcome unfavorable to the defendant"); *State v. Wittgenstein*, 1995-NMCA-010, ¶ 7, 119 N.M. 565, 893 P.2d 461 (noting that the defendant's failure to establish prejudice in her ineffective assistance claim is supported by the jury's acquittal of four of the defendant's seven charges).

{20}     Defendant also asserts that Mr. Rane was ineffective in failing to speak with Defendant before the day of trial. Counsel has a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Mr. Rane was substitute counsel for Mr. Turner from within Mr. Turner's office. As Defendant conceded, Mr. Turner was aware of the facts of his case and Mr. Turner had maintained a good level of communication with Defendant. Absent a showing of prejudice, Defendant cannot rest his claim of ineffective assistance solely on Mr. Rane's entry as a substituted counsel. *Cf. Nettleton v. State*,

320 A.2d 743, 745 (Del. 1974) ("[A] last minute transfer of the case from one Assistant Public Defender to another, without more, is not sufficient ground for a finding of ineffective assistance of counsel. The case was not transferred from one 'law office' to another. Presumably, the file of the case was complete and ready for use by the substituted Assistant."). Furthermore, the record is deficient of information regarding the extent to which Mr. Rane consulted with Defendant. Therefore, we are unable to assess Mr. Rane's effectiveness.

{21} Finally, Defendant asserts that Mr. Rane was ineffective in failing to call witnesses on Defendant's behalf. "Failure to make adequate pretrial investigation and preparation may . . . be grounds for finding ineffective assistance of counsel." *State v. Barnett*, 1998-NMCA-105, ¶ 30, 125 N.M. 739, 965 P.2d 323 (internal quotation marks and citation omitted). Here, again, the record is deficient of evidence that Mr. Rane failed to prepare and investigate in advance of trial, or that there were additional witnesses for Mr. Rane to call. *See State v. Miera*, 2018-NMCA-020, ¶ 34, 413 P.3d 491 ("[A] general claim of failure to investigate is not sufficient to establish a prima facie case if there is no evidence in the record indicating what information would have been discovered." (internal quotation marks and citation omitted)). In fact, Mr. Rane indicated that he had discussed the case with Mr. Turner, read all of the interviews, and prepared the case. Although Mr. Rane still needed to speak with one

13

officer before trial, Mr. Turner indicated at the pre-trial hearing that his interviews of the officers would be brief because he had already prepared based on their reports. Defendant therefore failed to establish a prima facie ineffective assistance of counsel claim.

**III.    CONCLUSION**

{22}    The judgment and sentence are affirmed.

{23}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____
**HENRY M. BOHNHOFF, Judge**


_____
**DANIEL J. GALLEGOS, Judge**