This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37079**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**QUINN RANSOM,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant, Quinn Ransom, appeals his convictions on two counts of burglary of an automobile contrary to NMSA 1978, Section 30-16-3(B) (1971), one count of attempted burglary of an automobile, and one count of possession of burglary tools contrary to NMSA 1978, Section 30-16-5 (1963). Defendant raises five issues on appeal: (1) his right to speedy trial was violated; (2) the evidence was insufficient to support his convictions; (3) he received ineffective assistance of counsel; (4) his

convictions violated his right to be free of double jeopardy; and (5) abuse of process. We affirm.

**BACKGROUND**

**{2}** The facts are as follows: On the evening of June 16, 2013, Defendant walked onto a parking lot next to No Hassle Auto in Clovis, New Mexico, and entered an unlocked van parked in the lot. Defendant rummaged around the van's interior and removed a small baseball bat. Defendant used the bat to break the windows of several vehicles parked on the lot. Clovis Police Officer Brian Wanzor saw Defendant striking the window of one of the vehicles with the baseball bat and observed several vehicles with broken windows. Officer Wanzor confronted Defendant as Defendant was attempting to open the door of one of the vehicles. Defendant dropped the bat and Officer Wanzor placed Defendant under arrest.

**{3}** Officer Wanzor testified that the interior of a Honda Civic had been "gone through" and that the glove box and console were open. John Kutcha, the owner of No Hassle Auto, testified that his business took possession of the vehicles on his lot when the owners brought them in for service and that Defendant was neither a customer nor authorized to be on the premises. Kutcha also testified that Defendant was not authorized to strike the vehicles with the baseball bat.

**{4}** In addition to witness testimony, the State introduced photo exhibits into evidence depicting the inside of multiple vehicles that had been rummaged through, including the Honda Civic described by Officer Wanzor. The State also introduced surveillance video showing Defendant shatter a window on a white Nissan Maxima and reach into the vehicle. Defendant did not present any witnesses.

**{5}** Defendant was convicted of two counts of auto burglary, one count of attempted auto burglary, and one count of possession of burglary tools. This appeal followed.

**DISCUSSION**

**I.  Defendant's Constitutional Right to Speedy Trial Was Not Violated**

**{6}** Defendant contends his constitutional right to a speedy trial was violated. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI; *see also* N.M. Const. art. II, § 14 ("[T]he accused shall have the right to . . . a speedy . . . trial."). Preventing prejudice to the accused is at the heart of the speedy trial right, which also emanates from "the concomitant 'societal interest in bringing an accused to trial.' " *State v. Serros*, 2016-NMSC-008, ¶ 4, 366 P.3d 1121 (quoting *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387).

**{7}** "In determining whether a defendant's speedy trial right was violated, [the appellate courts have] adopted the United States Supreme Court's balancing test

in *Barker v. Wingo*, 407 U.S. 514 . . . (1972)." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. We consider: "(1) the length of the delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Samora*, 2016-NMSC-031, ¶ 9, 387 P.3d 230 (internal quotation marks and citation omitted). We "weigh[ ] these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* (internal quotation marks and citation omitted). In reviewing these factors, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

## A. The Length of Delay Is Presumptively Prejudicial and Weighs Against the State

{8} We first determine whether the length of the delay is presumptively prejudicial. "The 'length of delay' factor serves a dual purpose when analyzing a speedy trial violation." *State v. Brown*, 2017-NMCA-046, ¶ 14, 396 P.3d 171. "[I]t acts as a threshold triggering mechanism used to determine whether the delay is 'presumptively prejudicial' . . . [and if so] it is the first independent *Barker* factor that must be addressed to determine whether a defendant's speedy trial rights have been violated." *Id.* ("A delay is presumptively prejudicial if the delay exceeds twelve months for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case." *Id.* (alterations, internal quotation marks, and citation omitted).

{9} Defendant argues that this was a simple case, rather than a case of intermediate complexity as the district court found. Defendant contends his case should be classified as simple because the charges stemmed from a single incident which was captured on video, the case did not involve expert witnesses, and the State ultimately called only two witnesses. Generally, "we defer to the district court's finding on the question of complexity when that finding is supported by substantial evidence." *See State v. Thomas*, 2016-NMSC-024, ¶ 11, 376 P.3d 184 (alterations, omission, internal quotation marks, and citation omitted); *State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (stating that the district court is in the best position to determine the complexity of a case because of its familiarity with the factual circumstances, contested issues, available evidence, judicial machinery, and "reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities" (internal quotation marks and citation omitted)).

{10} We have held that a simple case typically requires "less investigation and tend[s] to involve primarily police officer testimony during the trial," while an intermediate case seems "to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." *State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (internal quotation marks and citation omitted). At the time of the district court's ruling, Defendant

was facing a seventeen count indictment that included four counts of auto burglary, four counts of attempt to commit a felony, two counts of larceny, seven counts of criminal damage to property, and one count of possession of burglary tools.

**{11}** The district court relied on its review of the seventeen (17) charges and anticipated eleven (11) witnesses for the State, when it ruled that the case was of intermediate complexity. Given the number of varying charges and number of witnesses we conclude that substantial evidence supports the district court's determination and therefore defer to its finding of intermediate complexity, for which a delay of fifteen months is considered presumptively prejudicial. *Brown*, 2017-NMCA-046, ¶ 14.

**{12}** Defendant's speedy trial right attached when he was arrested on June 16, 2013. *See Laney*, 2003-NMCA-144, ¶ 10 (stating that the right to a speedy trial attached when the defendant becomes an accused, either by arrest, indictment, or criminal information). The district court denied Defendant's speedy trial motion on March 10, 2016. This delay of approximately thirty-three months exceeded the presumptively prejudicial threshold by approximately seventeen months. We therefore weigh this factor moderately against the State.[1] *See State v. Steinmetz*, 2014-NMCA-070, ¶ 6, 327 P.3d 1145 (weighing a length of delay twenty-eight months past the presumptively prejudicial threshold for an intermediate complexity case "moderately against the [s]tate.").

## B. Reasons for Delay

**{13}** We next evaluate "the reason the government assigns to justify the delay[,]" which "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citations omitted). There are three types of delay attributable to the state, which are weighed against the state in varying ways. *See State v. Castro*, 2017-NMSC-027, ¶ 22, 402 P.3d 688. First, deliberate attempts by the state to delay the trial in order to hamper the defense weigh heavily against the state. *Id.* Second, "neutral delays, including negligence or overcrowded courts that should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Id.* (alteration, internal quotation marks, and citation omitted). And third, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.* (internal quotation marks and citation omitted). These are delays which are considered neutral and do not weigh against the state. *Id.* ¶ 23. Finally, delay caused by the defense weighs against the defendant. *See Serros*, 2016-NMSC-008, ¶ 29.

**{14}** We identify eight periods of pretrial delay in this case: (1) from June 16, 2013, to March 30, 2015; (2) from December 16, 2013, to April 21, 2014; (3) from April 21, 2014, to September 8, 2014; (4) September 8, 2014, to January 26, 2015; (5) January 26,

---

1We note that even if the time between denial of Defendant's motion and the April 14, 2016 trial date is considered our analysis would not change.

2015, to July 20, 2015; (6) July 20, 2015, to October 6, 2015; (7) October 6, 2015, to February 16, 2016; and (8) February 16, 2016, to April 14, 2016.

## C.      June 16, 2013, to December 16, 2013; Six Months Delay

**{15}**    During this time period the case proceeded normally with the State filing the customary pleadings one expects to see filed in a criminal case. The State filed a notice of open file and certificate of disclosure, a demand for notice of alibi or entrapment defense, a notice of intent to call witnesses, and supplemental certificate of disclosure and information. The case was progressing normally and we weigh this period of delay neutrally. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (weighing the delay neutrally when "the case progressed with customary promptness"); *State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (concluding that because the case proceeded with customary promptness, delay cannot be held against either party).

## D.      December 16, 2013, to April 21, 2014; Four Months Delay

**{16}**    The second time period commences with the December 16, 2013 date of Defendant's first trial setting. The parties were present and scheduled to select a jury. However, Defendant sought a continuance stating that he did not wish to proceed with his attorney and wanted to review the video recording. The State objected to the continuance noting that it was prepared for trial. The district court granted Defendant's motion for a continuance. The district court appropriately weighed this period of delay against Defendant. *See State v. Fierro*, 2012-NMCA-054, ¶¶ 43-47, 278 P.3d 541 (concluding that delay weighed against the defendant when caused by his personal requests or as a result of his own actions and the state was ready for trial).

## E.      April 21, 2014, to September 8, 2014; Five Months Delay

**{17}**    The third period of delay begins on April 21, 2014, the date the parties were scheduled to select the jury for Defendant's April 23, 2014 trial setting. The State sought and was granted a continuance due to witness unavailability. The district court found that the delay was caused by the State. Defendant generally asserts this period of delay should weigh against the State. The State contends and we agree that this delay was justified because of witness unavailability. Therefore we weigh this period of delay neutrally. *See Garza*, 2009-NMSC-038, ¶ 27 (recognizing that "a valid reason, such as a missing witness, should serve to justify appropriate delay." (internal quotation marks and citation omitted)); *State v. Manes*, 1991-NMCA-025, ¶ 28, 112 N.M. 161, 812 P.2d 1309 (holding that rescheduling of preliminary hearing on three occasions because the state's witnesses could not attend the trial was a valid reason for a continuance and should not be weighed against the state).

## F.      September 8, 2014, to January 26, 2015; Four Months Delay

**{18}** The fourth period of delay commences on September 8, 2014, the date of the next docket call. During this hearing the State and defense counsel informed the district court that a plea agreement had been reached. The district court vacated the September 19, 2014, trial and scheduled a plea hearing for October 8, 2014. On October 8, 2014, Defendant acknowledged that he signed the plea agreement but then stated that he had not thoroughly reviewed the agreement, even though he and defense counsel had gone through it. Defendant withdrew from the agreement once informed that any commitment imposed would be served at the department of corrections as opposed the county detention center. Trial was rescheduled for January 26, 2015. Defendant contends that delay following his withdrawal was administrative delay caused by the district court's decision to set the plea hearing after the date set for trial and therefore the delay should weigh against the State.

**{19}** In *State v. Maddox*, 2008-NMSC-062, ¶ 24, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, our Supreme Court opened its discussion regarding delay resulting from plea negotiations with the statement that "[g]enerally, there is no rule attributing delay resulting from attempted plea negotiations to a specific party and absent some act of bad faith or some prejudice to the defendant, plea negotiations are themselves not a factor to be held against either party." *Id.* (internal quotation marks and citation omitted). The Court nevertheless set the following specific standards: "[P]lea negotiations are not an excuse for a delay in the prosecution of a case" and "unsuccessful plea negotiations do not constitute a valid reason for suspending the defendant's right to a speedy trial." *Id.* ¶ 25. The Court further stated that "the [s]tate is not excused in its burden to timely try a defendant while waiting for defense counsel to respond to a plea offer" and that "the State must affirmatively seek to move the case to trial, even while plea negotiations are pending." *Id.* ¶ 26. The Court in *Maddox* indicated that it would "weigh unreasonable periods of delay against the [s]tate," but that the time during which a defendant does not timely respond to plea offers will weigh "only slightly against the State." *Id.* Taking these various *Maddox* standards into consideration, we have read *Maddox* "to require the delay from plea negotiations to be weighed against the [s]tate when there exist measurable periods of negotiation." *See State v. Wilson*, 2010-NMCA-018, ¶ 33, 147 N.M. 706, 228 P.3d 490. "How heavily the delay is to be weighed depends on the length of that delay and [where applicable,] the amount of delay caused by a defendant in failing to timely respond to a plea offer." *Id.*

**{20}** Here, the State and Defendant reached a plea agreement. Thus the delay resulting from the vacation of the trial setting in order to schedule a plea hearing was not a result of on-going plea negotiations or caused by Defendant failing to timely respond to a plea offer. Nevertheless once the district court informed the parties that Defendant would not be permitted to serve any period of incarceration in the local detention center as opposed to the department of corrections Defendant was permitted to withdraw his plea agreement and trial was scheduled for January 26, 2016. Given that the State has the ultimate burden to bring a defendant to trial, *Maddox*, 2008-NMSC-062, ¶ 26, we weigh the period of delay resulting from the unsuccessful plea negotiation against the State but only slightly.

**G.       January 26, 2015, to July 20, 2015; Seven Months Delay**

**{21}**      The next period of delay commences on January 26, 2015, the jury selection date for Defendant's fourth trial setting. Defendant failed to appear and a bench warrant was issued. During a March 31, 2015 hearing, Defendant and his counsel appeared by video from the Bernalillo County Detention Center. Defense counsel explained that Defendant had appeared at the courthouse for jury selection but had been arrested on a warrant out of Albuquerque, where he was later transferred. Citing *State v. Urban*, 2004-NMSC-007, ¶ 15, 135 N.M. 279, 87 P.3d 1061, Defendant argues that the State should be charged with knowledge of his arrest and that the delay caused by his failure to appear weighs against the State.

**{22}**      In *Urban*, the state was charged with knowledge of the defendant's whereabouts because he was in custody when the state mailed the indictment to an address provided by the defendant. *Id.* ¶ 14. Our Supreme Court concluded that "with improvements in information technology, the [s]tate can now more readily locate [the d]efendant." *Id.* ¶ 15. Our Supreme Court held that "the [s]tate should be charged with constructive knowledge of the whereabouts of those in its custody." *Id.* Here, although Defendant was arrested at the court house on the very day he was to appear for jury selection, he was nevertheless in State custody. Given our case law we conclude that delay caused by Defendant's failure to appear on January 26, 2015, was a direct result of his arrest and therefore this period of delay weighs against the State.

**H.       July 20, 2015, to October 6, 2015; Three Month's Delay**

**{23}**      During the docket call on July 6, 2015, both parties notified the district court that they were prepared for trial. However, on July 20, 2015, the morning of jury selection, Defendant filed a motion to dismiss based on his right to speedy trial. Defense counsel advised there could be a possibility of hearing the motion during the week if the prosecutor would wave his time to respond to her motion. The State explained it would not be able to file a response to the motion during the week due to another trial. The district court scheduled a hearing on the motion for October 6, 2015, and rescheduled trial for October 22, 2015. We agree with the district court's conclusion that the delay caused by the speedy trial motion should weigh against Defendant. *See State v. Ochoa*, 2017-NMSC-031, ¶ 18, 406 P.3d 505 (stating that the "delay initiated by defense counsel generally weighs against the defendant.").

**I.       October 6, 2015, to February 16, 2016; Four Months Delay**

**{24}**      Defendant failed to appear for the hearing on his speedy trial motion on October 6, 2015, and a bench warrant was issued. At a later arraignment on the warrant, the district court reset trial for February 24, 2016, and directed defense counsel to have the speedy trial hearing set before trial. The district court found that delay caused by Defendant's failure to appear on October 6, 2015, weighed against him. We agree and conclude that this delay weighs against Defendant.

**J.      February 16, 2016, to April 14, 2016; Two Months Delay**

**{25}**    Defendant failed to appear at the docket call on February 16, 2016, and a bench warrant was issued. At arraignment for the warrant the district court reset trial to April 14, 2016. This delay was caused by Defendant and therefore it weighs against him.

**Sum of the Delay**

**{26}**    The total delay in this case was approximately thirty-three months. Of that, we weigh eleven months neutrally. We weigh eleven months against the State, however we do not weigh them heavily against the State because the delay was not intentional. We weigh a delay of thirteen months—heavily against Defendant.

**A.      Assertion of the Right**

**{27}**    Defendant argues that this factor should be weighed against the State. In analyzing whether a defendant has asserted his right to a speedy trial, we "accord weight to the frequency and force of the defendant's objections to the delay . . . [and] also analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32. "[P]ro forma motions are generally afforded relatively little weight in this analysis." *Urban*, 2004-NMSC-007, ¶ 16.

**{28}**    Here, Defendant asserted his right on two occasions. First in a June 24, 2013, entry of appearance filed while the case was pending in the magistrate court. Second, in a motion to dismiss on speedy trial grounds, filed July 20, 2015, some twenty-five months after his arrest.

**{29}**    Considered in isolation, each of these assertions would be enough to weigh this factor slightly in Defendant's favor. *See State v. Spearman*, 2012-NMSC-023, ¶¶ 32-33, 283 P.3d 272 (holding that the defendant's initial pro forma assertion along with a motion to dismiss based on a speedy trial violation weighted against the state). However, Defendant's assertions of the right are mitigated by his responsibility for numerous delays. *See State v. Samora*, 2016-NMSC-031, ¶ 20, 387 P.3d 230 (considering the defendant's pro forma assertion of the right in counsel's entry of appearance and motion to dismiss on speedy trial grounds together with the defendant's acquiescence to and responsibility for numerous continuances). In *Samora*, our Supreme Court held that the defendant demonstrated a lack of concern for his speedy trial right by delaying his trial for seventeen months and held that this factor did not weigh in his favor. *See id*. Similarly here, we hold that Defendant's dilatory tactics which caused thirteen months of delay, show that his assertion of his speedy trial right was more of an afterthought, filed on the morning of jury selection, and therefore this factor does not weigh in his favor.

**B.      Prejudice**

**{30}** Preventing prejudice to those accused is "[t]he heart of the right to a speedy trial[.] *Garza*, 2009-NMSC-038, ¶ 12. The speedy trial right is intended (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused; and" (3) "to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). "[G]enerally, a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. "However, lengthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice." *Ochoa*, 2017-NMSC-031, ¶ 54. "[A] court can under certain circumstances presume that a defendant suffered some degree of prejudice even without affirmative proof." *Id.* ¶ 56. A finding of presumed prejudice, however, does not inherently tip the scales in favor of Defendant's speedy trial claim. *See id.* ¶ 50 (holding that the defendant was prejudiced as a result of extended pretrial incarceration, but noting "this presumption does not dispose of the speedy trial claim").

**{31}** Defendant concedes that he "did not advance any evidence at his speedy trial hearing regarding prejudice incurred by the delay[.]" Rather, Defendant argues generally that because of the length of delay, he suffered undue anxiety and concern about his charges. We are mindful that "some degree of anxiety is inherent for every defendant awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the anxiety suffered is undue." *State v. Lujan*, 2015-NMCA-032, ¶ 20, 345 P.3d 1103 (omissions, internal quotation marks, and citations omitted). Without evidence of specific circumstances of anxiety and concern we can only speculate as to whether such prejudice was undue. *See Ochoa*, 2017-NMSC-031, ¶ 61 (declining to speculate as to particularized anxiety or concern where the defendant did not provide evidence in support); *Spearman*, 2012-NMSC-023, ¶ 39 (declining to hold that the defendant suffered undue anxiety based on the bare allegations of defense counsel). Having no evidence of particularized prejudice we decline to weigh this factor against the State.

## C.     Balancing

**{32}** Without a showing of actual prejudice, the three other *Barker* factors considered must weigh heavily against the State in order to establish a speedy trial violation. *See Garza*, 2009-NMSC-038, ¶ 39. Here, none of the factors weigh heavily against the State. Therefore, we conclude that there was no speedy trial violation.

## II.     Sufficiency of the Evidence

**{33}** Defendant argues there was insufficient evidence to support his convictions for auto burglary, attempted burglary, and possession of burglary tools. We disagree. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M.

691, 974 P.2d 661 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

## A.    Auto Burglaries and Attempted Auto Burglary

**{34}**    Consistent with UJI 14-1630 NMRA the jury was instructed that in order to convict Defendant of burglary of an automobile, it had to find, in relevant part, as to a white Chevy Venture van, and white Nissan Maxima that (1) defendant entered the vehicle without authorization; and (2) defendant entered the vehicle with the intent to commit a theft when inside. As to attempted auto burglary and consistent with UJI 14-2801 NMRA, the jury was instructed that in order to convict Defendant of attempted burglary of an automobile, (black Buick), it had to find, in relevant part, that (1) Defendant intended to commit the crime of burglary; and (2) Defendant began to do an act which constituted a substantial part of the burglary but failed to commit the burglary. As to each of these convictions, Defendant contends that the State failed to prove entry without authorization because "no car owners testified that [Defendant] was not authorized to enter their vehicles."

**{35}**    Although none of the vehicle owners testified at trial, the owner of the repair shop where the vehicles were parked testified that he took possession of the vehicles when owners left them at the shop and that Defendant was not authorized to be on the premises or authorized to strike the vehicles. Surveillance video played for the jury shows Defendant walk up to the white Nissan Maxima, strike and break the driver's side window with a bat, and after unsuccessfully trying to open the car door, reach into the vehicle where he proceeds to move his hand around the interior as if searching for something. Defendant then turns to a black Nissan, parked next to the white Nissan, and uses the bat to strike its front passenger side window multiple times. Unable to break the window of the black Nissan, Defendant turns back to the white Nissan, reaches for the driver's side door handle, and attempts to open it at which point Officer Wanzor confronts him.

**{36}**    Additionally, photo exhibits admitted into evidence showed shattered windows on multiple other vehicles as well as rummaged through vehicle interiors. We conclude that testimony, the surveillance video, and photo exhibits constituted "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Defendant's entry into the vehicles was unauthorized. *Salgado*, 1999-NMSC-008, ¶ 25 (internal quotation marks and citation omitted). To conclude otherwise would require this Court to assume the owners of the vehicles consented to the senseless criminal damage perpetrated by Defendant, which we will not do. We therefore find the evidence sufficient to support Defendant's convictions for auto burglary and attempted auto burglary.

## B.    Possession of Burglary Tools

**{37}**   Consistent with UJI 14-1633 NMRA the jury was instructed that in order to convict Defendant of possession of burglary tools, it had to find in relevant part that (1) Defendant had in his possession a metal bat, which is designed for or commonly used in the commission of a burglary; and (2) Defendant intended that this metal bat be used for the purpose of committing a burglary. Defendant contends the State failed to prove he "acquired the bat to commit a burglary." Specifically, Defendant points to a lack of evidence showing that he removed any items from the vehicles.

**{38}**   We are unpersuaded by Defendant's argument because "[b]urglary is a standalone crime that does not require the requisite intended crime be completed after entry." *State v. Ford*, 2019-NMCA-073, ¶ 14, 453 P.3d 471. Burglary is complete upon entry with the intent to commit a felony or theft therein. *See State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 60, 285 P.3d 622. Because burglary is completed upon entry "it is at the moment of entry or prior to the entry that the use or intended use of burglary tools matters." *Ford*, 2019-NMCA-073, ¶ 14.

**{39}**   Here the evidence supports a reasonable inference that Defendant intended to take items from the vehicles and that he utilized the bat to gain entry in order to do so. The photos of broken windows and the interiors of vehicles showing that they had been rummaged through, along with the video showing Defendant break the window of a vehicle with the bat and reach into the vehicle, and testimony from the officer who saw Defendant striking the window of a vehicle parked on the lot with the bat support a reasonable inference that Defendant was using the bat to gain entry to the vehicles with the intent to commit theft. Accordingly, we hold that evidence was sufficient to support Defendant's conviction for possession of burglary tools.

**Remaining Arguments**

**{40}**   Relying on *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant argues that it violated double jeopardy to use the evidence at trial in the instant matter because the same evidence had already been used to revoke his probation in another jurisdiction. Defendant concedes that the facts regarding his probation revocation proceeding are not contained in the record. Even if they were, Defendant's double jeopardy claim would fail because a "probation revocation proceeding is not a new criminal trial to impose new punishment, but instead is a hearing to determine whether, during the probationary period, the defendant has conformed to or breached the course of conduct outlined in the probation order." *In re Lucio F.T.*, 1994-NMCA-144, ¶ 4, 119 N.M. 76, 888 P.2d 958 (omissions, internal quotation marks, and citation omitted); *see State v. Neal*, 2007-NMCA-086, ¶ 43, 142 N.M. 487, 167 P.3d 935.

**{41}**   Defendant also argues that he received ineffective assistance of counsel because his attorney convinced him "against his better interests not to testify at trial" which Defendant contends, compromised his ability to present an adequate defense. The record before us does not contain the facts necessary for a full determination of this issue and therefore, the proper avenue for Defendant to pursue this claim is via habeas

corpus proceedings. *See State v. Morgan*, 2016-NMCA-089, ¶ 17, 382 P.3d 981; *see also State v. Barela*, 2018-NMCA-067, ¶ 17, 429 P.3d 961("Our Supreme Court has expressed a preference for bringing ineffective assistance claims through habeas corpus proceedings, rather than on direct appeal."), *cert. denied*, 2018-NMCERT-___ (S-1-SC-37184, Aug. 29, 2018).

**{42}**    Lastly, Defendant contends that he was subject to abuse of process necessitating reversal because the State did not present all of the witnesses identified on its witness list. Beyond this bare-bones assertion, Defendant advances no argument as to how the State's decision to not call each witness identified on its witness list amounts to an abuse of process. "[C]ounsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254. We therefore do not address this claim.

**CONCLUSION**

**{43}**    For the foregoing reasons, we affirm Defendant's convictions.

**{44}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**